**Susan PICKFORD, Petitioner**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION and Pennsylvania American Water Company, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 2008.

Decided Dec. 9, 2008.

Reargument Denied Feb. 13, 2009.

Publication Ordered Feb. 25, 2009.

---

William J. Cluck, Harrisburg, for petitioner.

Ann R. Johnston, Harrisburg, for respondent, Department of Environmental Protection.

Michael D. Klein, Washington, DC, for respondent, Pennsylvania American Water Company.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Susan Pickford (Pickford) petitions the Court for review of the order of the Environmental Hearing Board (EHB) granting a motion of the Pennsylvania American Water Company (Water Company) to dismiss Pickford's appeals of the construction and operation permits for water treatment facilities issued to the Water Company by the Department of Environmental Protection (DEP). The DEP joined in the motion. The EHB dismissed Pickford's appeals as untimely, and the EHB also determined that it lacked jurisdiction over Pickford's appeal of a DEP letter response to a complaint that Pickford submitted through the DEP's website.

Pickford argues that notices of the issuance of the Water Company's permits did not adequately inform its customers that the method of disinfection of the water supply was to be changed so that her time to appeal did not begin to run with publication of the notices. Pickford also argues that the DEP's letter response was an appealable action and thus was within the jurisdiction of the EHB to decide.

The Water Company provides public water supply to customers in Cumberland County and parts of York County through the West Shore Community Water System (WSCWS). Pickford is a licensed attorney who resides in Camp Hill, Cumberland County and is a customer of the WSCWS. The treatment facilities consist of the West Shore Regional Water Treatment Plant (West Shore Plant) and the Silver Spring Water Treatment Plant (Silver Spring Plant). In July 2003 the Water Company applied to the DEP for a public water supply permit under the Pennsylvania Safe Drinking Water Act, Act of May 1, 1984, P.L. 206, 35 P.S. §§ 721.1–721.17, to construct a new water treatment plant, raw water pumping station and transmission mains at the West Shore Plant. The proposed plant would include chloramination facilities to change the treatment chemicals in its distribution system from chlorine to chloramines.[1] Notice of the application was published in the Pennsylvania Bulletin on July 19, 2003. The construction permit was issued March 24, 2004, and notice was published in the Pennsylvania Bulletin on April 17, 2004. The DEP received no comments or appeals concerning the permit application or the issuance of the permit.

In October 2004 the Water Company applied for a public water supply permit to construct an aqua-ammonia feed system and two chemical unloading containment stations at the Silver Spring Plant. This feed system would mix ammonia with chlorine to create chloramines. Notice was published in the November 20, 2004 Pennsylvania Bulletin. The DEP issued the construction permit on February 16, 2005 and notice was published on March 5, 2005. When construction of the modifications at the Silver Spring Plant was completed, the Water Company obtained an operating permit from the DEP on March 29, 2006. Notice was published in the Pennsylvania Bulletin on April 15, 2006. When the new West Shore Plant facilities were completed, the Water Company obtained an operating permit on March 31, 2006. Notice was published on April 15, 2006.

---

1. The Water Company describes chloramines as a combination of chlorine and ammonia used in many U.S. cities as a treatment for disinfection. Reproduced Record (R.R.) at 102a.

Pickford learned of the change in disinfectant chemicals from an informational brochure sent to customers of the WSCWS around July 12, 2007. The Water Company then held two public information meetings on July 26, 2007. Pickford was told by a DEP official during the last week of July 2007 that permits had been granted to the Water Company for the use of chloramines. She filed a Pennsylvania Public Utility Commission (PUC) complaint on August 1, 2007, the status of which is not relevant here. Pickford states that she did not actually see the permits until she received the Water Company's preliminary objections to her PUC complaint, served on her on or about August 28, 2007. She submitted a complaint to the DEP via its website on October 20, 2007, reiterating her concerns about the potential adverse effects from the use of chloramines and asking the DEP to withdraw the permits or to place them on hold. On November 1, 2007, Rodney L. Nesmith, the Program Manager for DEP's Water Supply Management Program, responded via email to Pickford's complaint to DEP, rejecting her contentions and reaffirming the permits issued to the Water Company (Nesmith Letter).[2]

Pickford filed a notice of appeal to the EHB on November 30, 2007, seeking review of permits issued in 2004, 2005 and 2006 and claiming denial of due process because the published notices were not reasonably calculated to inform interested parties of the impending change in chemicals. She appealed as well the Nesmith Letter. Prior to completing discovery, the Water Company filed a motion to dismiss and/or motion for summary judgment. In granting its motion to dismiss, the EHB concluded that the permits were not misleading or incomplete as there was no requirement for according the disinfection method any particular emphasis in the notices. Pickford should have appealed within thirty days of the publication of notices as required by regulations governing practice before the EHB. *See* 25 Pa.Code § 1021.52(a)(2). Also, the Nesmith Letter did not represent an appealable action since it merely refused to withdraw or place on hold the permits.[3]

Pickford frames her first argument as a challenge to the EHB holding that the notices published in the Pennsylvania Bulletin were reasonably calculated to inform

2. The Nesmith Letter reads as follows:
   In response to your October 20, 2007 website complaint:
   PAWC holds several valid Public Water Supply permits issued by DEP that authorize construction and operation of chloramine disinfection facilities. Chloramine disinfection is one of several valid tools that can be used to minimize the formation of regulated disinfection byproducts (trihalomethanes and haloacetic acids).
   DEP is aware of the ongoing research at EPA. We are in frequent contact with the staff of that agency and have been reviewing their data. DEP and EPA agree that their research indicates the source water characteristics and treatment sequences of the PAWC system will not result in meaningful concentrations of the newly discovered iodinated disinfection byproducts.

As with all issues pertaining to drinking water quality, DEP continuously evaluates and updates its disinfection byproduct requirements. Should new information reveal a need to change our requirements to protect public health, DEP would certainly do so. At this time, however, we have no data to suggest that a change is appropriate.
R.R. 16a.

3. This Court's review of the EHB order is limited to determining whether an error of law has been committed, constitutional rights have been violated or findings of fact are unsupported by substantial evidence. *Grimaud v. Department of Environmental Resources*, 161 Pa.Cmwlth. 647, 638 A.2d 299 (1994).

customers of the change in the method of disinfection. She quotes from *Pennsylvania Coal Mining Ass'n v. Department of Insurance,* 471 Pa. 437, 452, 370 A.2d 685, 692–693 (1977), arguing that notices should have been "reasonably calculated to inform interested parties of the pending action...." She maintains that notices at a minimum should have identified the switch in chemicals where the purpose of the construction was to change the disinfection treatment, and she argues that the change constituted a "substantial modification" as defined by DEP regulations[4] and that no reason existed for failing to provide actual notice.

The Water Company asserts that the EHB only looked at the rules governing the publication of notices under the Safe Drinking Water Act and found no requirement for special emphasis of the selection of disinfection method to be used. The Water Company breaks down Pickford's initial argument into four issues, noting first that pursuant to 25 Pa.Code § 109.503(d)(1) notice must only be published for applications under 25 Pa.Code §§ 109.503(a) or (b)(1) or § 109.507, none of which apply to the change in treatment chemicals at issue here.[5] A change in treatment chemicals would fall under 25 Pa.Code § 109.503(b)(2)[6] and would not require publication in the Pennsylvania Bulletin.

■ The DEP agrees that no special notice was required for the change in treatment chemicals from chlorine to chloramines and that the notices comply with regulations promulgated under the Safe Drinking Water Act. The DEP adds that its notices satisfy requirements of Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, providing that reasonable notice and an opportunity to be heard must be afforded before an administrative agency adjudication becomes valid. The DEP published six separate notices concerning the Water Company's permits, inviting public comment and review. Hence, the public was afforded due process as contemplated in *Pennsylvania Coal Mining Ass'n.*

The Water Company next argues that even if the published notices should state specifically that the company had applied for a change in disinfection chemicals from chlorine to chloramines, Pickford's appeal nonetheless was still untimely. Under 25 Pa.Code § 1021.52(a)(2)(i) and (ii), an appeal must be filed within thirty days *after notice* of the action has been published in the Pennsylvania Bulletin or thirty days after *actual notice* of the action if notice is not published in the Pennsylvania Bulletin. Pickford indicates in her brief that she

4. A substantial modification is defined at 25 Pa.Code § 109.1 as:

A change in a public water system that may affect the quantity or quality of water served to the public or which may be prejudicial to the public health or safety and includes the addition of new sources; the expansion of existing facilities; changes in treatment processes; addition, removal, renovation or substitution of equipment or facilities; and interconnections.

5. Section 109.503(a) concerns public water system construction permits; Section 109.503(b)(1) concerns amendments to construction permits that propose major changes;

and Section 109.507 concerns permits for innovative technology.

6. This section deals with minor changes to construction permits which are described as including: *"changes in treatment chemicals;* replacement of tank or reservoir linings or similar materials in contact with the water supply; interconnections; covering of reservoirs; construction of covered storage tanks and standpipes designed to standard specifications; transmission mains; and changes in legal status, such as transfers of ownership, incorporation or mergers." 25 Pa.Code § 109.503(b)(2) (emphasis supplied).

learned of the impending change in chemicals when she received an informational brochure from the Water Company around July 12, 2007. In discovery responses Pickford admits learning of the DEP permits during the last week of July 2007 and first reading them on or about August 28, 2007. She was quoted in newspaper articles between August 1 and September 3, 2007 expressing concerns about the change, but despite having actual knowledge she did not appeal to the EHB until November 30, 2007.

The Water Company submits that this case is similar to *Grimaud v. Department of Environmental Resources*, 161 Pa. Cmwlth. 647, 638 A.2d 299 (1994), where the landowners argued the inadequacy of published notices of the issuance of a sewer permit. They asserted that their status as lower riparian landowners entitled them to personal notice of the national pollution discharge elimination system permit issued under the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. § 691.202. However, even after they received actual notice, they waited six months before appealing to the EHB. The Court denied the landowners' petition for appeal *nunc pro tunc*, concluding that they sat on their rights for almost six months after learning of the permit before filing their petition for allowance of appeal *nunc pro tunc* and that the argument that personal notice would have made a difference lacked merit. Pickford admits that she had actual notice of the Water Company permits when she spoke with a DEP official during the last week of July 2007. Nevertheless, she waited nearly four months before filing her appeals, and as with the landowners in *Grimaud* she offered no explanation for this delay.

■ The Court concludes that the EHB was correct in determining that the regulations do not require published notices for construction or operation permits

for water treatment plants to single out for emphasis the disinfection method to be used. Inasmuch as the DEP provided the required notices of its actions concerning the permits, Pickford should have filed her appeals within thirty days of notice under 25 Pa.Code § 1021.52(a)(2)(i), but she failed to do so. Moreover, Pickford failed to appeal within thirty days after she received actual notice of DEP's actions regarding the permits as required by 25 Pa.Code § 1021.52(a)(2)(ii). Accordingly, the EHB did not err when it dismissed Pickford's appeals as untimely filed.

■ Pickford's second argument is that the EHB should not have dismissed her appeal of the Nesmith Letter because it was an appealable action by the DEP. She bases her argument entirely on an EHB decision allowing an appeal of a DEP letter granting an exemption from the permitting process under the Clean Streams Law and the Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§ 750.1–750.20a. In *Stern v. Department of Environmental Protection*, 2001 WL 830922 (Pa. EHB Docket No. 2000–221–K, issued June 15, 2001), the DEP had granted an exemption to a developer in 1999 but later discovered that its sewerage plan called for a pressure driven system rather than a gravity-only fed system. The DEP then reconsidered the exemption request in 2000, which involved reviewing new information. The EHB found that because a new and different review was undertaken in 2000, the letter granting the exemption in 2000 was an appealable decision. Pickford claims that she provided new information concerning scientific studies with her complaint and that the DEP apparently considered it, thus making the Nesmith Letter an appealable decision.

■ The Water Company correctly notes that unpublished administrative decisions such as *Stern* have no precedential

value before this Court. *State Farm Mutual Auto. Ins. Co. v. Department of Insurance*, 720 A.2d 1071 (Pa.Cmwlth.1998), *aff'd* 560 Pa. 595, 747 A.2d 355 (2000) (holding that administrative decisions have no precedential value before the Commonwealth Court). It adds that in any event *Stern* is distinguishable because the plans considered by the DEP for the first exemption were different from those reviewed the second time. There is no claim here that the Water Company strayed from what it had proposed in its permit applications. The Water Company and the DEP argue that Pickford's attempt to appeal the Nesmith Letter is actually a collateral attack on the prior permitting decisions, which were rendered final by her failure to timely appeal. Such attack is barred by the administrative finality doctrine applied in *Potratz v. Department of Environmental Protection*, 897 A.2d 16 (Pa.Cmwlth.2006), where the Court concluded that since the petitioner failed to appeal the construction permit issued to the water authority there, it would be unfair to allow attack on its operating permit after the construction permit had become final.[7]

The DEP notes that the Safe Drinking Water Act confers jurisdiction upon the EHB over actions to recover costs to abate public nuisances, 35 P.S. § 721.12(a), and over appeals of civil penalties under the act, 35 P.S. § 721.13(g). Since the Nesmith Letter is neither, EHB jurisdiction could be conferred only by the Environmental Hearing Board Act, Act of January 13, 1988, P.L. 530, *as amended*, 35 P.S. §§ 7511–7514 ("EHB Act"). Under the EHB Act, the EHB may hold hearings and issue adjudications on "orders, permits, licenses or decisions" of the DEP and may review any "action" taken by the DEP. Section 4(a) and (c) of the EHB Act, 35 P.S. § 7514(a), (c). This Court recently recognized that there is "no bright line rule for what communication from the [DEP] is an 'action' of the Department." *HJH, LLC v. Department of Environmental Protection*, 949 A.2d 350 (Pa.Cmwlth. 2008). It observed that a "decision" would not be appealable unless it resulted in an action being taken against a party that affected "property rights, privileges, liabilities [or] other obligations." *Id.* at 353.

The Court therefore holds that the Nesmith Letter does not constitute an appealable decision. The Nesmith Letter does not affect Pickford's personal or property rights; rather, it merely affirmed the status quo of the approved permits issued to the Water Company. *HJH.* Pursuant to the doctrine of administrative finality, Pickford may not collaterally attack the DEP's permitting decisions by means of an appeal of the Nesmith Letter after having failed to timely appeal the permits through the prescribed administrative process. Accordingly, the EHB committed no error in dismissing Pickford's appeals, and the Court affirms.

Judge SIMPSON did not participate in the decision in this case.

### ORDER

AND NOW, this 9th day of December, 2008, the order of the Environmental Hearing Board is hereby affirmed.

---

7. The Water Company references cases where this Court has held that letters similar to the Nesmith Letter were not appealable. *See, e.g., Alternate Energy Store, Inc. v. Department of Environmental Resources,* 107 Pa.Cmwlth. 66, 527 A.2d 1077 (1987) (letter advising of status of permit and rejecting extension request was not an adjudication or appealable action).