Susan K. PICKFORD, Robert F. and Nancy L. Cox, Anthony Davis, Lisa M. Walker, Victoria Millard, Christine and Erik Bish, David and Jessica Sears, Matt and Tricia J. Coniglio, Hans and Renee Wertz, Barbara Stern, William V. Bottonari, Kelly L. Houpt, Arthur Sconing, Gerard E. and Barbara Martin, Carl L. Crone, Sharon Landis, Anne Marie Judson, Adele Wilcox and John Kirk, Danielle Oakes, and Missak Sisserian, Petitioners

v.

PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 15, 2010.

Decided June 29, 2010.

Publication Ordered Sept. 2, 2010.

Rhonda L. Daviston, Asst. Counsel, Harrisburg, for respondent.

Ann R. Johnston, Asst. Counsel, Harrisburg, for intervenor, Department of Environmental Protection.

Michael D. Klein, Washington DC, for intervenor, Pennsylvania American Water Company.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

This is an appeal from the Order of the Pennsylvania Utility Commission (Commission) which dismissed complaints filed by Susan Pickford (Pickford) and 18 other customers (hereinafter collectively "Petitioners") of the Pennsylvania American Water Company (PAWC) on the grounds that Petitioners failed to establish a *prima facie* violation of Section 1501 of the Public Utility Code (Code), 66 Pa.C.S. § 1501.

*PAWC's Change From Chlorinated Water (treated with chlorine) to Chloraminated Water (treated with chlorine and ammonia)*

In 2003, PAWC announced that it intended to convert its West Shore Regional Water Treatment Plant and the Silver Spring Water Treatment Plant from "chlorinated" water to "chloraminated" water.[1]

PAWC applied for a public water supply permit to operate the chloramination facilities. The Department of Environmental Protection (DEP) granted the public water

---

1. Chlorination is a disinfectant process which uses **chlorine** to destroy harmful bacteria. Use of **chlorine** may result in taste and odor issues. Chloramination water is a disinfectant process which uses a combination of **chlorine** and **ammonia** to reduce the taste and odor of chlorine in drinking water.

supply permit and published notice in the *Pennsylvania Bulletin.* In obtaining the public water supply permits from the DEP, PAWC demonstrated to the DEP's satisfaction that the proposed use of chloramines achieved public health goals and produced water that met water quality standards with no known health effects. The DEP considered that the Environmental Protection Agency (EPA) had previously determined that chloramines posed no health concerns to humans at levels used for drinking water disinfection and confirmed that "[d]rinking water chloramine levels that meet the EPA standard are associated with minimal to no risk and should be considered safe."[2]

### Petitioners' Untimely Appeal to the Environmental Hearing Board

On November 30, 2007, Pickford, an attorney and customer of PAWC, filed a notice of appeal to the Environmental Hearing Board (EHB) and sought review of the DEP-issued permits claiming a denial of due process because of alleged inadequacies in the notices published in the *Pennsylvania Bulletin.* The EHB granted PAWC's motion to dismiss Pickford's appeal as untimely because the notices were not misleading or incomplete. Pickford appealed to this Court for review of the EHB order. This Court affirmed the EHB order concluding, as the EHB had, that the appeal was untimely and that the notices were adequate. *Pickford v. Department of Environmental Protection,* 967 A.2d 414 (Pa.Cmwlth.2008). On July 30, 2009, the Supreme Court of Pennsylvania denied Pickford's Petition for allowance of appeal. *Pickford v. Department of Environmental Protection,* 603 Pa. 678, 982 A.2d 67 (2009).

### Petitioners' Complaints before the Commission

Between August 2007 and May 2008, the Commission received 24 formal complaints in response to the announcement that the PAWC intended to convert the West Shore Regional Water Treatment Plant and the Silver Spring Water Treatment Plant from chlorinated water to chloraminated water. The complaints each alleged adverse health effects from chloraminated water and requested that the Commission prevent PAWC from proceeding with its program until the health issues were studied and resolved.

### PAWC's Preliminary Objections— Commission Lacked Subject Matter Jurisdiction

The PAWC moved to dismiss the complaints for lack of subject matter jurisdiction. The PAWC argued that the allegations involved matters related to water quality and water purity issues which were within the exclusive jurisdiction of the DEP and EPA. It noted that *water quality* and the purity of *the water itself* was exclusively regulated in Pennsylvania, not by the Commission, but by the EPA and the DEP pursuant to the Federal Safe Drinking Water Act[3] and Pennsylvania

---

**2.** EPA official website at www.epa.gov/safewater/disinfection/chloramine.

**3.** 42 U.S.C. §§ 300j–300j–10. The Federal Safe Drinking Water Act was enacted in 1974 and gave the EPA the authority to establish national drinking water standards to be enforced by the states. 42 U.S.C. § 300a–1(b). The national drinking water standards are outlined in the National Primary Drinking Water Regulations which are based on sound science to protect against public health risks, considering available technology and costs. 42 U.S.C. § 300(f). These "primary standards" are legally enforceable standards which apply to all public water systems. Primary standards protect drinking water quality by limiting the levels of specific contaminants and residual disinfectants. These standards are established after exhaustive evaluation.

Safe Drinking Water Act.[4] PAWC argued that the Commission, on the other hand, oversees issues involving the quality and character of water *service.*

The Administrative Law Judge (ALJ) agreed that the DEP had exclusive jurisdiction over the potential health effects of chloraminated water and dismissed the complaints. Petitioners filed exceptions. On March 13, 2008, the Commission reversed the ALJ and remanded for a hearing on whether reasonable and adequate notice was given to PAWC's customers of the proposed change and whether PAWC's choice of treatment alternatives and cost and implementation was prudent and appropriate. The Commission ruled that that Section 1501 of the Code, 66 Pa.C.S. § 1501, which requires that every public utility furnish and maintain adequate, efficient, safe and reasonable service and facilities, invested the Commission with jurisdiction over water quality service. The Commission further concluded that Section 318(b) of the Code, 66 Pa.C.S. § 318(b), further invested the Commission and the DEP with joint jurisdiction to review issues of water purity.

On remand, there were extensive prehearing proceedings, public hearings were conducted, numerous motions were filed, and proposed written expert testimony was submitted. Based on the fact that the DEP had already evaluated the public health issues associated with the use of chloramines based on EPA studies, the ALJ ruled *in limine* that no evidence relating to the public health determinations made in the context of the DEP's permitting decisions would be allowed:

> As the agency entrusted with the jurisdiction to administer and enforce the federal and state standards relating to disinfectants applied to drinking water, DEP evaluated the public health issues associated with the use of chloramines, and, as stated in DEP's Motion [in Limine] 'the permit issued to respondent [PAWC] incorporates limits and conditions needed to protect public health.' Motion at 2. That decision cannot be collaterally attacked in this proceeding, nor is this preceding (sic) the appropriate venue to challenge the federal and state standards relating to disinfectants. No evidence will be permitted, therefore, relating to the public health determinations made in the context of DEP's permitting decisions to allow the use of chloramines at the PAWC facilities at issue here.

Prehearing Order # 1, May 5, 2009, at 4; Reproduced Record (R.R.) at 98a.

Petitioners appealed the ALJ's decision on the ground that it was inconsistent with the Commission's conclusion that it had joint subject matter jurisdiction with the DEP over this water quality issue. The

---

4. Act May 1 1984, P.L. 206, *as amended,* 35 P.S. §§ 721.1–721.17. Pennsylvania enacted the Pennsylvania Safe Drinking Water Act in 1984 pursuant to which it achieved "primacy" or the sole authority to implement the Federal Safe Drinking Water Act within its jurisdiction. Pursuant to the Pennsylvania Safe Drinking Water Act, the Environmental Quality Board has the power and duty to adopt rules and regulations of the DEP governing the provisions of Section 4 of the Pennsylvania Safe Drinking Water Act. 35 P.S. § 721.4. The EQB is governed by the following:

> The [EQB] shall adopt maximum contaminant levels and treatment technique requirements no less stringent than those promulgated under the Federal Act for all contaminants regulated under the national primary and secondary drinking water regulations. The board may adopt maximum contaminant levels or treatment technique requirements for any contaminant that a maximum contaminant level or treatment requirement has not been promulgated under the national primary or secondary drinking water regulations.
>
> 35 P.S. § 721.4(a).

Commission clarified that the DEP has primary jurisdiction with regard to the public health issues related to the use of chloramines and these proceedings "cannot be used to challenge the DEP's permitting process or the issuance of the four permits involved." Commission Order, July 17, 2008, at 11. The Commission found that evidence of public health and safety issues associated with chloramines and chloramine-byproducts should be excluded because the Commission "will not second-guess the DEP's permitting decisions or its public health determinations regarding the use of chloramines" and the parties "may not use this venue to collaterally attack the decisions of the DEP or standards related to disinfectants properly within its authority under the federal and state safe drinking water laws." Id. at 14.

The Commission identified the only remaining issues within its jurisdiction before the ALJ on remand: (1) whether reasonable and adequate notice was given to PAWC's customers; (2) whether the PAWC's choice of treatment alternatives and its cost and implementation was prudent and appropriate; and (3) whether water provided at the tap was suitable for all household uses and constituted the provision of safe, adequate, efficient and reasonable services under 66 Pa.C.S. § 1501.

### Dr. Conaway's Expert Testimony

In their Prehearing Memorandum, Petitioners indicated that they anticipated calling Dr. Conaway as an expert witness to testify about the health effects of chloramines and chloramine byproducts, the lead leaching effects of chloramines, damage to pipes and plumbing fixtures, fish kills and other environmental impacts of chloramines in treating water and water treatment alternatives. Both the DEP and the PAWC filed Objections to the admissibility of Dr. Conaway's testimony to the extent that it was not relevant or material to the

issues and violated the ALJ's Pretrial Order which precluded evidence on the issue of the health effects of chloramines. The Office of Consumer Advocate (OCA) filed an Answer to the Objections. Petitioners, however, did not respond or oppose the Objections. In an order dated September 25, 2008, the ALJ sustained the Objections because Petitioners did not timely answer.

> Pursuant to 52 Pa.Code §§ 5.103 and 5.156(b), the joint complainants' [Petitioners] answer to PAWC's Objections was due on or before September 17, 2008.
>
> No answer to the Objections was filed by the joint complainants or served on me either electronically or by hard copy. Therefore, it can reasonably be assumed that they do not contest the Objections and have withdrawn the statements, and the Objections are granted.

Order Regarding Testimony, September 25, 2008, at 3; R.R. at 213a.

A public hearing was held on October 22, 2008. Petitioners offered the testimony of 13 witnesses who attempted to explain their reasons for their perceptions and concerns over the health and environmental effects of chloramination. The ALJ ruled that the testimony was inadmissible as hearsay and/or opinion requiring expert testimony.

After Petitioners presented their case-in-chief, the PAWC moved to dismiss the complaints for failure to establish a *prima facie* case. The ALJ granted the motion finding that the Petitioners had failed to present evidence that chloraminated water would be unsuitable for household use or that the PAWC abused its managerial discretion in deciding to implement the chloramination. The ALJ also concluded with respect to the issue of the adequacy of the notice provided by PAWC that Petitioners failed to establish that the notice violated

Section 1501 of the Code, 66 Pa.C.S. § 1501. The Commission adopted the ALJ's decision and dismissed the complaints in their entirety.

■ On appeal,[5] Petitioners raise three issues.[6]

### Whether the Commission Properly Prohibited Petitioners From Introducing Evidence Relating to the Alleged Adverse Health Effects of Chloramines?

Petitioners argue that the Commission abused its discretion when it denied them the opportunity to present evidence of the relative adverse health effects of chloramination and water treatment alternatives that do not include ammonia. They argue this evidence was *not* offered to challenge the EPA's and DEP's determination that chloramination was a safe disinfectant method. Rather, it was offered to demonstrate the unreasonableness of PAWC's choice to use chloramination given the respective risks to plumbing, appliances, fish ponds and aquariums and human health (dialysis patients). Petitioners argue that this "choice of treatment" issue is a "service-related" and "reasonableness of service" issue within the jurisdiction of the Commission. They contend the issue falls squarely within the authority of the Commission because the Code requires public utilities to provide "safe and reasonable service" to the public and the Code[7] gives the Commission authority to regulate services to make sure they are safe:

> *Every public utility shall furnish and maintain* adequate, efficient, *safe and reasonable service* and facilities, and shall make all such repairs, changes,

**5.** When reviewing a decision of the Public Utility Commission, the scope of review is to determine whether constitutional rights have been violated or an error of law committed, and the Commission's findings are supported by substantial evidence in the record. *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 561, 493 A.2d 653 (1985).

**6.** The issues are set forth in the Statement of Questions as follows:
1. Whether the Commission's interpretation and application of PUC's jurisdiction in its Order denying Petitioners' Exceptions and dismissing Petitioners' Complaints was an error of law and abuse of discretion with regard to purity and quality of water in the context of service related issues as to whether the company's choice of treatment provides adequate, safe and reasonable service under Section 1501 of the Code?
2. Whether the Commission acted contrary to law and abused its discretion in denying Petitioners the opportunity to present evidence of adverse health conditions as they relate to the issues of service under Section 1501 of the Code?
3. Whether the Commission erred as a matter of law and abused its discretion when it excluded Petitioners' expert testimony addressing infrastructure, home plumbing, fish fatality, elastomer degradation, lead leaching and the expert's opinion of the reasonableness of this choice of treatment in terms of Section 1501 of the Code?

Because the first two issues relate to the same question, whether Petitioners were denied the opportunity to present evidence of alleged adverse health conditions as they relate to the issues of service under Section 1501 of the Code, this Court will address them collectively.

**7.** Section 1505(a) of the Code provides:

> *Whenever the commission,* after reasonable notice and hearing, upon its own motion or upon complaint, *finds that the service* or facilities *of any public utility* are *unreasonable, unsafe,* inadequate, insufficient or unreasonably discriminatory, or otherwise in violation of this part, the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed including all such repairs, changes, alterations, extensions, substitutions or improvements in facilities as shall be reasonably necessary and proper for the *safety,* accommodation and convenience of the public.

66 Pa.C.S. § 1505(a) (Emphasis added).

alterations, substitutions, extensions and improvements in or to such service and facilities as shall be necessary or proper for the commendation, convenience, and safety of its patrons, employees and the public.

66 Pa.C.S. § 1501 (Emphasis added).

This Court must agree with the Commission that, despite attempts to cast their complaints as a challenge to PAWC's choice of treatment under Section 1501 of the Code, Petitioners' concerns were obvious challenges to the health effects of chloramines under the permits issued by the DEP.

 It is well settled that the Commission may not exceed its jurisdiction and must act within it. *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 157 Pa.Super. 595, 43 A.2d 348 (1945). Jurisdiction may not be conferred by the parties where none exists. *Roberts v. Martorano,* 427 Pa. 581, 235 A.2d 602 (1967). Subject matter jurisdiction is a prerequisite to the exercise of the power to decide a controversy. *Hughes v. Pa. State Police,* 152 Pa.Cmwlth. 409, 619 A.2d 390 (1992). As a creature of legislation, the Commission possesses only the authority the state legislature has specifically granted to it in the Code. 66 Pa.C.S. §§ 101–3316. Its jurisdiction must arise from the express language of the pertinent enabling legislation or by strong and necessary implication therefrom. *Feingold v. Bell,* 477 Pa. 1, 383 A.2d 791 (1977).

This Court ruled on the jurisdiction conferred by the Pennsylvania Safe Drinking Water Act to the DEP and the limitations on the Commission's authority over drinking water in *Rovin, D.D.S. v. Pennsylvania Public Utility Commission,* 94 Pa. Cmwlth. 71, 502 A.2d 785 (1986). Precedent makes clear the distinction between water *service,* which the Commission may regulate, and water quality, which may only be regulated by the DEP. *Rovin,* 502 A.2d at 787.

In *Rovin,* Sheldon Rovin (Dr. Rovin), a dentist, filed a complaint with the Commission and asserted that the Philadelphia Suburban Water Company (PSWC) failed to provide the public with adequate, safe and reasonable water service in violation of Section 1501 of the Code, 66 Pa.C.S. § 1501. Dr. Rovin complained that some of his patients received fluoridated water while others did not and that those patients who had not received the fluoridated water were denied its benefits. He also asserted that those patients who had received fluoridated water were at risk if their pediatricians prescribed a fluoride supplement. *Rovin,* 502 A.2d at 786.

The Commission dismissed Dr. Rovin's complaint because it lacked subject matter jurisdiction. Dr. Rovin appealed to this Court and argued that the Commission "misconceived the nature of his complaint." *Rovin,* 502 A.2d at 786. He averred that the real issue was "whether an unreasonable and potentially unsafe situation exist[ed], in violation of Section 1501 of the Code, when PSWC provide[d] only some of its customers with fluoridated water." *Id.* at 786. Dr. Rovin asserted that the water was unsafe because fluorosis could occur if a patient who drank the fluoridated water received a fluoride application.

Finding that Dr. Rovin was "actually complaining about the quality of the water" and not the water service, this Court held that the Commission properly dismissed his complaint for lack of jurisdiction. *Id.* at 787. "Water *quality* in Pennsylvania is statutorily regulated by the provisions of the Pennsylvania Safe Drinking Water Act and the Federal Safe Drinking Water Act" and "[e]nforcement of those statutes is specifically vested in [DEP] and the Federal Environmental

Protection Agency." *Id.* at 787. (citations omitted; emphasis in original). Because Dr. Rovin did not otherwise complain about the quality of service by PSWC this Court concluded that he did not sustain his burden of proving a violation of Section 1501 of the Code and the Commission properly dismissed his complaint.

*Rovin* is directly applicable to this proceeding. Petitioners, like Dr. Rovin, framed the issue in terms of whether it was more prudent or reasonable for the PAWC to use an alternative decontaminant which was allegedly less risky. This is a challenge to what goes into the water. That is, they challenge the water itself, in terms of its quality and whether it has the potential to be harmful. Like in *Rovin*, the challenge involves the substances used in the treatment of the water and the resultant impact on the health of the public. This issue of water purity is under the exclusive jurisdiction of the DEP as it has primacy over the enforcement of the Safe Drinking Water Act. The DEP granted the permits which concluded that use of chloramines is within the Safe Drinking Water Act guidelines. The actions filed by Petitioners are a collateral attack on the DEP permitting process. The Commission did not err in refusing to re-litigate and second guess the DEP's determinations regarding water quality.

Even if Petitioners sought merely to demonstrate that other treatment methods did not have the adverse impacts of chloramines, the Commission, in order to make this determination would have to supplant the water quality standards established pursuant to the Pennsylvania Safe Drinking Water Act for chloramines and conduct its own evaluation of the comparative safety of these DEP-approved water treatment chemicals. Such an undertaking was beyond the jurisdiction of the Commission. PAWC was issued a permit to use chlora-

mines because the EPA and DEP approved them for use and had determined that water treated with chloramines within the federal and state safe drinking water standards was safe to drink. There was, therefore, no need for risk-risk analysis with respect to health effects because safety had been conclusively established.

As PAWC points out, Petitioners missed their opportunity to challenge the use of chloramines before the proper agency. As noted, the EHB had dismissed Pickford's appeal of the DEP permits and concluded that the appeal was not timely and the notices were not misleading or incomplete. That determination was affirmed by this Court in *Pickford v. Department of Environmental Protection*, 967 A.2d 414 (Pa. Cmwlth.2008). Petitioners then commenced these actions before Commission which correctly and consistently throughout these proceedings declined to decide the issue since it was outside the Commission's jurisdiction. Again, it is the DEP that has clear and primary jurisdiction regarding water quality under the Safe Drinking Water Act. Petitioners' request that the Commission reexamine the public health determinations made by the DEP is a straight forward collateral attack on the DEP approval. To allow the actions to go forward would overturn the Legislature's policy choice to entrust such matters to the DEP. The Commission did not err when it precluded Petitioners from introducing evidence of the alleged adverse health effects of chloramines.

Petitioners' argument that they were deprived of the opportunity to present evidence of what they characterized as *non-health* related risks is equally unavailing. Once treatment methods are deemed safe, the utility's decision to use one or the other is a managerial decision. Here, PAWC explained that the change to chloramination was necessary to eliminate the

smell of chlorine in the water. As explained by the Pennsylvania Supreme Court under the management decision doctrine "it is not within the province of the Commission to interfere with the management of a utility unless an abuse of discretion or arbitrary action by the utility has been shown." *Pennsylvania Public Utility Commission v. Philadelphia Electric Company*, 522 Pa. 338, 344, 561 A.2d 1224, 1226–27 (1989).

■ Here, to meet their burden, Petitioners were required to demonstrate that PAWC's decision to use a DEP-approved treatment chemical was an abuse of discretion or an arbitrary decision which adversely affected the public. The ALJ provided Petitioners sufficient opportunity to present evidence that chloramines damaged pipes, were toxic to fish and interfered with kidney dialysis machines and that, therefore, PAWC should have rejected this method of disinfection. She heard testimony from 13 lay witnesses during the public input hearings who expressed their concerns and personal opinions about the damage to pipes, lead leaching, toxicity to fish and expenses relating to home filtration units. The nature of these opinions, however, was scientific and required an expert. Therefore the ALJ properly disregarded them. Many lay witnesses also testified that they believed PAWC's decision to change to chloramination should be postponed until further research is done on the effects of chloramines. Again, this issue was conclusively resolved by the EPA which determined that at 4 parts per

million, chloramine as a residual disinfectant in drinking water has no known or anticipated adverse health effects. The DEP has implemented this standard.

This Court finds no error with the conclusion of the ALJ and Commission that Petitioners failed to meet their burden to demonstrate that PAWC's service, specifically its choice of treatment to use chloramines, was not reasonable, safe or prudent under Section 1501 of the Code.

***Whether the Commission Properly Struck Dr. Conaway's Written Testimony on Procedural and Substantive Grounds***

■ Petitioners argue that the Commission abused its discretion when it granted the DEP's and PAWC's Objections to the testimony of Petitioners' expert, Dr. C. Clifford Conaway (Dr. Conaway). Dr. Conaway offered his opinion on the various negative effects of treating water with chloramines. Petitioners did not respond to the Objections. The ALJ considered the objections and the other parties' responses and excluded the testimony.

The Commission did not abuse its discretion. The ALJ noted that the attorneys who represented Petitioners were experienced attorneys with extensive specialized experience before the Commission and should have responded to the possibility of having Dr. Conaway's testimony precluded.[8] As recognized by the ALJ,

---

8. To the extent that Petitioners contend that the reason they did not respond timely because there was no notice stating that "a responsive pleading must be filed within 20 days," as required by 52 Pa.Code § 5.103(b), the ALJ and Commission rejected this argument in view of the fact that again, counsel was experienced in practice before the Commission, and all parties, including Petitioners, had routinely filed numerous motions, includ-

ing Motions in Limine, a Petition for Reconsideration, a Motion for Extension of Time, none of which included the § 5.103(b) notice. Moreover, 52 Pa.Code § 5.103(c) requires that "a party has 20 days from the date of the service within which to answer to object to a motion ..." There is nothing in this section which alters the time to answer a motion or objection based on whether the motion includes the § 5.103(b) notice.

both the DEP and the OCA understood the need to respond.

The ALJ rejected as unreasonable Petitioners' position that they believed that the admissibility of Dr. Conaway's testimony would be resolved at the upcoming expert witness hearing. The ALJ observed that if PAWC's objections were not ruled upon until the expert witness hearing, then Petitioners would have been required to pay Dr. Conaway to travel to Harrisburg and attend the hearing despite the possibility that PAWC's objections would be sustained. In addition, PAWC would have incurred the expense of hiring rebuttal experts and having to prepare testimony. As explained by the ALJ, "[i]t is difficult to believe that [Petitioners] expected that the parties would be required to undertake this expense and burden when it could be avoided simply by PAWC's objections being ruled upon before the hearing." Hearing Transcript, April 24, 2008, at 31; R.R. at 303a.

Because Petitioners never filed an answer and had no rational basis to believe that the objections would be ruled upon at the impending expert witness hearing the Commission did not err in granting the Objections.

Accordingly, based on the foregoing, the Order of the Pennsylvania Utility Commission is affirmed.

### ORDER

AND NOW, this 29th day of June, 2010, the Order of the Pennsylvania Public Utility Commission in the above-captioned case is hereby affirmed.