West Penn Power Company,      :
                    Petitioner :
                               :
          v.                   :
                               :
Pennsylvania Public Utility    :
Commission,                    :   No. 1548 C.D. 2018
                    Respondent :   Argued: September 9, 2019


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: October 2, 2019


          West Penn Power Company (West Penn)[1] petitions this Court for review
of the Pennsylvania Public Utility Commission's (Commission) orders entered on
July 14, 2017 (July 2017 Order)[2] and October 25, 2018 (October 2018 Order).[3]  There
are five issues before the Court: (1) whether the Commission's jurisdiction over

---

[1]

> West Penn [] is a Pennsylvania [u]tility that provides distribution
> service to customers in 23 counties.  West Penn is owned by
> First[]Energy Corporation [(FirstEnergy)].  And FirstEnergy [] also
> has [a] separate subsidiary named First[]Energy Service Company
> [(FirstEnergy Service)].  FirstEnergy Service provides all the services,
> engineering, construction, accounting, legal, et cetera, to the operating
> companies.

Reproduced Record (R.R.) at 99a.
     [2] The July 2017 Order was issued as a Tentative Opinion and Order which became final on
August 14, 2017.  *See* R.R. at 681a.
     [3] Although West Penn petitions for review of the July 2017 Order, since that Order was
rescinded by the October 2018 Order, only the October 2018 Order is before this Court for review.

herbicide use in a public utility's right-of-way (ROW) is preempted by the statutes commonly referred to as The Clean Streams Law (CSL),[4] and the Pennsylvania Pesticide Control Act of 1973 (Pesticide Control Act);[5] (2) whether substantial evidence supports the Commission's October 2018 Order finding that West Penn's herbicide use would violate Section 1501 of the Public Utility Code (Code);[6] (3) whether the Commission abused its discretion by: (a) finding no Code violation in its July 2017 Order but finding said violation in its October 2018 Order based on the same evidentiary record, and by granting different relief; (b) finding said violation where such finding conflicted with prior precedent; and (c) failing to engage in reasoned decision-making; (4) whether the Commission unreasonably interfered with West Penn's duty to provide reasonably reliable service to its customers; and (5) whether the Commission complied with Section 703(e) of the Code[7] when it issued its July 2017 Order and the October 2018 Order.[8]

On March 15, 2016, FirstEnergy Service Company (FirstEnergy Service) notified Robert M. Mattu (Complainant) on West Penn's behalf relative to a West Penn transmission line on his property, that FirstEnergy Service had "prescribed

---

[4] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

[5] Act of March 1, 1974, P.L. 90, *as amended*, 3 P.S. §§ 111.21-112.

[6] 66 Pa.C.S. § 1501. Section 1501 of the Code states, in pertinent part:

> Every public utility shall furnish and maintain adequate, efficient, safe, and **reasonable service** and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities **as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public**. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the [C]ommission.

*Id*. (emphasis added).

[7] 66 Pa.C.S. § 703(e).

[8] This Court has reordered the issues for clarity.

2

that the stumps of the woody vegetation that was cut in 2015 be treated using an [Environmental Protection Agency (]EPA[)-]registered herbicide" (March 15, 2016 Letter).[9]  Reproduced Record (R.R.) at 475a.  On April 26, 2016, Complainant filed a formal complaint (Complaint) with the Commission pursuant to Section 1501 of the Code regarding West Penn's vegetation management at West Penn's ROW on Complainant's property.  Therein, Complainant asserted:

> I have a power line running thr[ough] my property.  On my property[,] I have [two] wells that [are my] water supply and a pond with fish and wildlife.  Neighboring [my] property is [my] son's house who [sic] also has a well for water supply.  First[]Energy [Service] hired a tree service to brush out the power line.  Now [it] want[s] to spray herbicide chemicals to hold the brush down.  This power line was put in place in 1968 and I have lived here since 1978.  Never once has the power line been sprayed and [I] DO NOT want it sprayed.

R.R. at 8a-9a.

Complainant requested that the Commission "order [FirstEnergy Service] not to spray the power line as long as the wells are [his] only source of water."  *Id*. at 10a.  Despite Complainant's reference to "spray[ing of] herbicide chemicals[,]" *id*. at 9a, West Penn intended to manage the vegetation using the "cut stump application," whereby herbicides are applied directly to the cut tree stumps' cambium layer (Cut Stump Application), rather than being sprayed.  *Id*. at 596a.

An Administrative Law Judge (ALJ) held hearings on August 31 and October 25, 2016.  Complainant testified at the August 31, 2016 hearing regarding his concerns about the possible contamination of his water supply.  West Penn presented

---

[9] The March 15, 2016 Letter further explained: "To cut or mow the brush without the use of herbicide is an unacceptable solution.  Cutting brush increases stem densities and allows for rapid growth that hinders safety, accessibility and reliability."  R.R. at 475a.  It also stated: "West Penn . . . feels it is necessary to exercise [its] rights and will control all the stumps of the woody vegetation that was previously cut in 2015 on [its ROW] through the use of EPA[-]registered herbicides."  *Id*.

3

the testimony of FirstEnergy Service Manager of Program Management and Oversight Shawn Standish, FirstEnergy Service Transmission Forestry Specialist Nicholas Weston, and EnviroSolutions Group President and Managing Partner Salvatore Quattrocchi. The ALJ found all of the witnesses' testimony credible.

On March 29, 2017, the ALJ issued her initial decision (Initial Decision) recommending that the Complaint be dismissed because Complainant failed to meet his burden of proving that the Cut Stump Application method was unsafe and unreasonable in violation of Section 1501 of the Code. Complainant did not file exceptions to the Initial Decision.

Pursuant to Section 332(h) of the Code,[10] the Commission exercised its authority to review the Initial Decision. On June 14, 2017, in a joint motion (Joint Motion), Commission Chairman Gladys M. Brown and Commissioner David W. Sweet moved for the Commission to reverse the Initial Decision in part. Consistent with the Joint Motion, the Commission entered the July 2017 Order reversing the Initial Decision. Therein, the Commission found that "the analysis of the ALJ was thorough and . . . her decision approving West Penn['s] proposed actions was consistent with both Commission precedent and West Penn['s vegetation management plan (]VMP[)]." R.R. at 624a. Notwithstanding, observing that Commission-approved VMP compliance claims are regularly used as a defense to

_____

[10] 66 Pa.C.S. § 332(h). Section 332(h) of the Code provides, in relevant part:

> If no exceptions are filed, the decision shall become final, without further [C]ommission action, unless two or more commissioners within 15 days after the decision request that the [C]ommission review the decision and make such other order, within 90 days of such request, as it shall determine. The Office of Trial Staff and the chief counsel shall be deemed to have automatic standing as a party to such proceeding and may file exceptions to any decision of the administrative law judge under this subsection.

*Id*.

4

claims of Code, or Commission regulation or order violations, the Commission found the VMP "vague and lacking in sufficient detail to provide the owners . . . any guidance in determining the circumstances under which the landowners may anticipate the manner in which the [ROWs] will be cleared." R.R. at 625a.

The Commission further opined:

> [T]here is a point where the use of herbicides is simply not consistent with the landowner's ability to fully utilize the property, especially where, as is the case here, the source of water is shallow wells close to the [ROW]. **Under appropriate circumstances, a landowner should be able to seek an exception to the utility's proposed use of herbicides, and if the utility still refuses, the landowner should be able to seek relief from the Commission**. At that point, the landowner should file a petition for relief rather than a complaint. **The reason that this Commission has not previously sustained complaints against utilities is that no violations of a statute, regulation or order of the Commission were found**. Rather, the landowners were seeking an exception to the utility's proposed method of clearing the [ROW]. In fact, that is the nature of the request before us today.

R.R. at 626a (emphasis added). Because "simply finding West Penn['s] planned method of clearing vegetation from [the ROW] to be consistent with its VMP [was] not sufficient to provide an equitable result in the instant case[,]" but no statutory or regulatory violations permitted the Commission to sustain the Complaint, the Commission instead, *sua sponte*, converted the Complaint to a petition for relief.[11] R.R. at 624a.

---

[11] This Court has held:

> [I]n order for the [Commission] to sustain a complaint brought under [Section 1501 of the Code], the utility must be in violation of its duty under th[at] section. Without such a violation by the utility, the [Commission] does not have the authority, when acting on a customer's complaint, to require any action by the utility.

5

The Commission reasoned:

> [T]he [p]arties have fully litigated a case filed as a complaint, although the prayer for relief, *i.e.*, a Commission directive to West Penn [] to not use herbicides on the [ROW], is a request that is more suited to a petition for relief than to a complaint. The burden of proving entitlement to the requested relief lies with the proponent of the case in both complaints and petitions for relief, **meaning that there would be no change in the burden of proof if the case had been brought as a petition for relief instead of a complaint**. 66 Pa.C.S. § 332(a).[12] Both parties had an opportunity to present their own cases, having been given notice and an opportunity to be heard. As the requirements of due process have been met, there is no prejudice to either side by treating this [C]omplaint as a petition for relief under [Section 5.41 of the Commission's Regulations,] 52 Pa. Code § 5.41.

R.R. at 627a (emphasis added).

The Commission concluded:

> We believe that the use of herbicides, which are by their very nature hazardous, can be properly used in some

---

*W. Penn Power Co. v. Pa. Pub. Util. Comm'n*, 478 A.2d 947, 949 (Pa. Cmwlth. 1984); *see also* 66 Pa.C.S. § 701 (relating to complaints). There is no such restriction on the Commission's authority when considering a petition for relief.

[12] Commissioners John F. Coleman, Jr. (Coleman) and Robert F. Powelson issued a Joint Dissenting Statement to the Joint Motion, therein arguing:

> The Joint Motion notes that other complainants have had great difficulty in meeting their burden of proof in prior cases involving herbicide use in ROWs. The Joint Motion acknowledges that these complaints have failed because [the movants] have not been able to demonstrate any violation of the [Code], a regulation or order of the Commission. The Joint Motion insists that this conversion has no impact on the due process rights of the parties, and that the [Complainant] still has the burden of proof. **While the burden of proof may not have shifted, the Joint Motion changes the standard of review it is applying to this case**. **Under the new standard, and unlike prior complaints, no violation of Section 1501 [of the Code] must be proven**.

R.R. at 617a (emphasis added).

6

circumstances. However, in the present case, the Complainant has established that his circumstances require more care in choosing and applying vegetation management methods than many other landowners' circumstances. We note that our decision to grant this [p]etition for [r]elief is fact-specific and not intended to create a bright line test by which future cases should be evaluated. Rather, we find that the totality of the circumstances here, in this specific case, is sufficient to grant the Complainant relief by directing West Penn [] to maintain its [ROW] where it crosses the Complainant's land by means which do not include the use of herbicides. Given this unique fact pattern, the use of herbicides would be unreasonable. Our decision in this case does not bar West Penn [] from utilizing other vegetation management methods including grinding tree stumps or assessing the vegetation growth within this [ROW] on a shorter time frame. We note that this is consistent with the methods used to maintain this portion of the [ROW] in past vegetation management cycles.

R.R. at 629a. Accordingly, the Commission ordered West Penn to forgo using herbicides in the ROW on Complainant's property absent Complainant's permission.

On August 29, 2017, West Penn petitioned the Commission for reconsideration of its July 2017 Order, challenging, *inter alia*, the Commission's jurisdiction to provide relief absent violation of the Code, Commission regulation, or Commission order, the conversion of the Complaint into a petition for relief, and the Commission's jurisdiction over a public utility's herbicide use.

On October 25, 2018, the Commission issued its October 2018 Order granting West Penn's reconsideration petition "solely to the extent that the July 2017 Order shall be rescinded and revised to review and consider [Complainant's Complaint] under the standards applicable to complaints under the [Code]." R.R. at 681a (italics omitted). The Commission found merit in West Penn's argument that

the [p]arties litigated and created an evidentiary record . . . based on whether West Penn's proposed work plan violated the Code, a Commission [r]egulation, or a Commission

7

[o]rder [and that] the [p]arties had no notice that [the] proceeding would, instead, be evaluated under a newly created 'equitable/fairness' standard; nor did they have the opportunity to address or introduce evidence to support this standard since it was altered after the record closed and an Initial Decision was issued.

R.R. at 696a-697a.

Upon considering West Penn's reconsideration petition's merits, the Commission referenced the July 2017 Order, acknowledging:

On exercise of our review of the record, **we found that**, although **West Penn's actions** were consistent with its . . . VMP[] and **did not violate any provision of the Code, a Commission [r]egulation or Commission [o]rder**, the mere finding of such was not sufficient to provide an 'equitable' result to [Complainant] under the specific facts of [the Complaint].

R.R. at 684a (emphasis added; footnote omitted). Notwithstanding, later in the same October 2018 Order, in direct contradiction of its earlier representation, the Commission stated: "In our July 2017 Order we were clear in our conclusion that, under the specific facts of the instant dispute, West Penn's application of herbicides as part of its vegetation management, would be unreasonable **and, therefore, violate Section 1501 of the Code**[.]" R.R. at 698a (emphasis added; italics omitted). The Commission further explained that, in the "July 2017 Order[,] we expressly considered and found unpersuasive under the facts of this dispute, the utility's reliance on and general reference to, its procedures and policies, with little or no regard to the specific topology and site characteristics of the area[.]" R.R. at 699a (italics omitted). Based on Complainant's testimony, corroborated by the record evidence pertaining to the proximity of the wells to the ROW, the Commission found that Complainant proved it would be unreasonable for West Penn to apply its herbicide treatment to the ROW. The Commission rejected West Penn's contention that the Commission lacks jurisdiction over its herbicide use, referencing this Court's

8

decision in *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 578 A.2d 75 (Pa. Cmwlth. 1990) (*West Penn I*) for the proposition that the Commission has subject matter jurisdiction over a public utility's vegetation management.

Accordingly, with the October 2018 Order, the Commission rescinded the July 2017 Order, reversed the Initial Decision, sustained Complainant's Complaint, and prohibited West Penn from using herbicides on the subject ROW **until the date that a public or alternative water source for the property is available**.[13] West Penn appealed to this Court.[14]

---

[13] Commissioners Coleman and Norman J. Kennard issued a Joint Dissenting Statement asserting, *inter alia*, that Complainant failed to meet his burden of proof in that his testimony constituted mere opinion and speculation, that the Commission's opinion lacked sufficient detail as required under Section 703(e) of the Code – specifically that the Commission determined that West Penn's plan was unreasonable, and "the testimony of a non-expert layman outweigh[ed] the testimony" of West Penn's two expert witnesses and one lay witness, without any explanation therefor. R.R. at 678a. In addition, the Commissioners contended that the Commission's jurisdiction over a public utility's use of herbicides is unclear. *See* R.R. at 679a.

[14] This Court has explained:

> On a petition to review a decision of [the Commission], our standard of review is limited to determining whether substantial evidence supports the necessary findings of fact, whether [the Commission] erred as a matter of law, and whether constitutional rights were violated. [*Coal. for Affordable Util. Servs. & Energy Efficiency in Pa. v. Pa. Pub. Util. Comm'n*], 120 A.3d [1087,] 1094 [(Pa. Cmwlth. 2015)]. We defer to [the Commission's] interpretation of the . . . Code and its own regulations unless [the Commission's] interpretations are clearly erroneous. *Id.* at 1095. We may not substitute our judgment for that of [the Commission] 'when substantial evidence supports the [Commission's] decision on a matter within the [C]ommission's expertise.' *Id.* (internal quotation marks and citation omitted). 'Judicial deference is even more necessary when the statutory scheme is technically complex.' *Id.* (internal quotation marks and citation omitted). On issues of law, 'our standard of review is *de novo* and our scope of review is plenary.' *Id.*

*Retail Energy Supply Ass'n v. Pa. Pub. Util. Comm'n*, 185 A.3d 1206, 1220 (Pa. Cmwlth. 2018) (footnote omitted).

## Commission Jurisdiction

West Penn contends that the Commission lacks jurisdiction to restrict its herbicide use because, under the CSL, only the Pennsylvania Department of Environmental Protection (DEP), the Environmental Quality Board (EQB) and the Environmental Hearing Board (EHB) are authorized to regulate potential surface and groundwater contamination. Further, West Penn asserts that, pursuant to the Pesticide Control Act, the Pennsylvania Department of Agriculture (PDA) exclusively regulates herbicide use and application.

This Court has held:

> [**P**]**ublic utility service embraces vegetation management**. The [Commission] has full authority to enforce the provisions of the [Code]. Certain acts, done while rendering utility service, fall within the ambit of the [Commission's] jurisdiction under [Section 1501 of the Code] over character of utility service. In particular, **vegetation management activities by an electric utility fall within the [Code's] definition of service** in [Section 102 of the Code,] 66 Pa.C.S. § 102.[15] Utility service 'is

---

On March 27, 2019, Energy Association of Pennsylvania filed an amicus curiae brief urging this Court to reverse the Commission's October 2018 Order.

[15] Section 102 of the Code defines "service" as:

> Used in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, or contract carriers by motor vehicle, in the performance of their duties under this part to their patrons, employees, other public utilities, and the public, as well as the interchange of facilities between two or more of them, but shall not include any acts done, rendered or performed, or any thing furnished or supplied, or any facility used, furnished or supplied by public utilities or contract carriers by motor vehicle in the transportation of voting machines to and from polling places for or on behalf of any political subdivision of this Commonwealth for use in any primary, general or special election, or in the transportation of any injured, ill or dead person, or in the transportation by towing of wrecked or

not confined to the distribution of electrical energy, but includes 'any and all acts' related to that function.' [*West Penn I*, 578 A.2d at 77] (citing 66 Pa.C.S. § 102). *See also Popowsky* [*v. Pa. Pub. Util. Comm'n*,] 653 A.2d [1385,] 1389 [(Pa. Cmwlth. 1995)] ('utility's maintenance of vegetation is a regulated service even though fault, either on the part of the utility or the customer, has no relevance to the existence of vegetation maintenance as a service.')[.]

*PECO Energy Co. v. Twp. of Upper Dublin*, 922 A.2d 996, 1004-05 (Pa. Cmwlth. 2007) (emphasis added; citations omitted).

Section 701 of the Code, pertaining to complaints, states, in relevant part:

The [C]ommission, or any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in **violation**, or claimed **violation, of any law which the** [C]**ommission has jurisdiction to administer, or of any regulation or order of the** [C]**ommission**. Any public utility, or other person, or corporation likewise may complain of any regulation or order of the [C]ommission, which the complainant is or has been required by the [C]ommission to observe or carry into effect.

66 Pa.C.S. § 701 (emphasis added). Thus, the Commission may only sustain a complaint where the public utility violates the Code, Commission regulation or a Commission order. As the *PECO Energy* Court explained, a utility's vegetation management is a regulated service within the Commission's jurisdiction.

The Complaint, and the July 2017 and October 2018 Orders pertained to the manner in which West Penn was to conduct its vegetation management. In response to the Complaint, pursuant to Sections 701 and 1501 of the Code, the

---

disabled motor vehicles, or in the transportation of pulpwood or chemical wood from woodlots.

66 Pa.C.S. § 102.

Commission considered whether West Penn's planned herbicide use violated "any law which the [C]ommission has jurisdiction to administer, or . . . any regulation or order of the [C]ommission[,]" 66 Pa.C.S. § 701, specifically, whether such is an **unreasonable vegetation management method** under Section 1501 of the Code. The Commission does not have jurisdiction to administer the CSL or the Pesticide Control Act. However, here, the Commission did not improperly administer the CSL or Pesticide Control Act, *i.e.*, the Commission did not regulate surface water and groundwater contamination. Rather, the Commission agreed with Complainant that West Penn's plan to use herbicides as part of its vegetation management was **not** reasonable under Section 1501 of the Code. The Commission's October 2018 Order addressed the reasonableness of the utility service under the mandates of Section 1501 of the Code. *See PECO Energy*. The Commission did not and could not prohibit use of herbicides at the subject location **under the CSL or the Pesticide Control Act**; nor could it explicitly permit such use pursuant to the CSL or Pesticide Control Act. In accordance with Section 701 of the Code, the Commission reviewed compliance with laws and regulations **which the Commission is authorized to administer**, and not the CSL or the Pesticide Control Act. The Commission need not refrain from evaluating whether a public utility's vegetation maintenance is reasonable[16] under Section 1501 of the Code simply because that maintenance involves herbicide use.[17]

West Penn urges this Court to apply the two-step process outlined in *Department of General Services v. Ogontz Area Neighbors Ass'n*, 483 A.2d 448 (Pa. 1984), to resolve a power conflict among governmental agencies and "to determine which entity the legislature intended to have preeminent powers over a given area of

---

[16] Accepting West Penn's argument would deprive the Commission of the right to consider the reasonableness of a public utility's VMP whenever herbicides or pesticides are included therein.

[17] A Commission conclusion that herbicide use is reasonable under Section 1501 of the Code does not dictate that the use is permissible under the CSL or Pesticide Control Act.

regulation."[18]  *Del. Riverkeeper Network v. Sunoco Pipeline L.P.*, 179 A.3d 670, 694 (Pa. Cmwlth. 2018).  For the aforementioned reasons, this Court concludes that there is no conflict in the instant case in the use of powers between the Commission and the other agencies.  Accordingly, we decline to apply the *Ogontz* test to the present matter and hold that the Commission had jurisdiction to render a decision on the Complaint.

### Substantial Evidence and Complainant's Burden

Next, West Penn argues that the Commission's finding of a violation of Section 1501 of the Code is not based on substantial evidence.

Findings of fact supporting an agency adjudication must be supported by substantial evidence.  *See* 2 Pa.C.S. § 704.  "Substantial evidence is defined as 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'"  *Arctic Cat Sales Inc. v. State Bd. of Vehicle Mfrs.*, *Dealers & Salespersons*, 110 A.3d 242, 248 n.5 (Pa. Cmwlth. 2015) (quoting *Kerr v. Pa. State Bd. of Dentistry*, 960 A.2d 427, 436 (Pa. 2008)).

Section 332(a) of the Code specifies that "the proponent of a rule or order has the burden of proof."  66 Pa.C.S. § 332(a).  Thus, "[a]s the party filing a

---

[18] The Pennsylvania Supreme Court summarized the *Ogontz* test in *Hazleton Area School District v. Zoning Hearing Board*, 778 A.2d 1205, 1210 (Pa. 2001), stating:

> The first step requires the reviewing court to determine, through examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent.  In the event there is no such express legislative mandate, the second step requires the court 'to determine legislative intent as to which agency is to prevail . . . turn[ing] to the statutory construction rule that legislative intent may be determined by a consideration, *inter alia*, of the *consequences* of a particular interpretation.'

*Hazleton*, 778 A.2d at 1210 (quoting *Ogontz*, 483 A.2d at 455) (emphasis in original; citation omitted).

formal complaint with the [Commission], [Complainant] had the burden of establishing that [West Penn] failed to provide . . . reasonable services." *Aronson v. Pa. Pub. Util. Comm'n*, 740 A.2d 1208, 1211 (Pa. Cmwlth. 1999).

At the ALJ hearing, Complainant expressed his concerns about the planned herbicide use, stating:

> [E]verything I read about this spray is you got to have to [sic] all the protection on, protective gloves and respirators, glasses.  After you're done, you got to wash off.  You know, everything I read about it tells me that it's not good.  And the same with years ago.  1968 Agent Orange over in Vietnam.

R.R. at 74a-75a.  On cross-examination, Complainant testified:

> Q.  [Complainant], your opinion that you are concerned that the herbicides will get into your water and be unsafe, that's not based on any scientific study or any science, is it?
>
> A.  No.  That is based on what I heard about herbicides in the last 50 years.
>
> . . . .
> Q.  I'm sorry, [Complainant], what's your educational background?
>
> A.  My educational background, I don't have very much of one.  I went to work when I was 16 years old as a bricklayer helper, and then I went up to bricklayer.  And I've been a brick[]layer since I was 20 years old and I'm 64 now.
>
> . . . .
>
> Q.  So your opinion that the use of herbicides at your property is unsafe, it's just based on your opinion; correct?
>
> A.  Well, I seen what it did to people throughout life.  I've got friends of mine that are dying from that Agent Orange, from herbicides, for one thing.  And I see when they spray, you know, what could happen, it kills this, kills that.  I seen it.

R.R. at 89a-91a.

14

This Court has held that "[m]ere bald assertions, personal opinions or perceptions do not constitute evidence." *Mid-Atlantic Power Supply Ass'n v. Pa. Pub. Util. Comm'n*, 746 A.2d 1196, 1200 (Pa. Cmwlth. 2000). Moreover, "speculation does not amount to substantial evidence. Substantial evidence requires more than a scintilla of evidence or suspicion of the existence of a fact to be established." *Bobchock v. Unemployment Comp. Bd. of Review*, 525 A.2d 463, 465 (Pa. Cmwlth. 1987); *see also W.J. Menkins Holdings, LLC v. Douglass Twp.*, 208 A.3d 190 (Pa. Cmwlth. 2019).

Complainant's evidence consists entirely of his property's description, and his personal opinion, unsubstantiated concerns and speculation that spraying herbicides would be harmful to his water supply. Importantly, West Penn did **not** plan to **spray** herbicides on the vegetation but, rather, to use the Cut Stump Application, and Complainant offered no evidence demonstrating how that method, or the specific herbicides to be used, would endanger his drinking water, or otherwise be unreasonable.

The Commission nevertheless concluded:

> [W]e find that [Complainant] has carried his burden of proving that the risk of herbicides contaminating his wells, which are the sole source of water to his property, if West Penn used herbicides within the [ROW], is too substantial to ignore and, therefore, it would be unreasonable for West Penn to use its preferred method of vegetation management for this particular property. On this basis, we find that [Complainant] has satisfied his burden pursuant to Section 701 of the Code, 66 Pa.C.S. § 701[.]

R.R. at 709a. The Commission further reasoned:

> The lay testimony of [Complainant], corroborated by the uncontested facts regarding the close proximity to his wells to the ROW where the herbicides are proposed to be applied supports our determination that we articulated in the July 2017 Order [wherein] we analyzed the record and

15

concluded that, on the particular facts present here, [Complainant] is entitled to relief.

R.R. at 710a (italics omitted). Finally, the Commission stated: "All witnesses were found by the presiding ALJ to be credible. However, we shall adopt the position of [Complainant] concerning the lay testimony, which is corroborated and uncontested concerning the location of his wells at the subject property." R.R. at 711a.

West Penn disputes the Commission's conclusion that Complainant carried his burden. It compares Complainant's evidence to that presented in *Bureau of Corrections v. City of Pittsburgh, Pittsburgh City Council*, 532 A.2d 12 (Pa. 1987). In that case, objectors protested a conditional use application for placement of a state prisoner pre-release center in their community. After a hearing at which objectors voiced their opposition, Pittsburgh City Council denied the application and the Allegheny County Common Pleas Court affirmed. On appeal, this Court reversed, holding that the objectors had not met their burden of showing that the facility would threaten the community. On further appeal, the Pennsylvania Supreme Court affirmed this Court, explaining:

> 'Substantial evidence' is 'relevant evidence as a reasonable mind might accept to support a conclusion.' *Valley View Civic Ass*[*'n v. Zoning Bd. of Adjustment*], . . . 462 A.2d [637,] 640 [(Pa. 1983)] (citations omitted). The evidence presented by the objectors consisted of testimony of various residents . . . . The testimony showed that many of the residents perceived that the addition of the center to the neighborhood would ruin the neighborhood for various reasons. For example, there were statements made concerning the high crime rate in the area, the number of bars in the area, and the existence of a house of prostitution in the area. There was also concern voiced about the numerous elderly and female residents in the area. Finally, concern over the effect on property values which would be caused by the center was expressed. The testimony of the neighborhood's residents, however, was not substantiated by facts but **was no more than their bald assertions, personal opinions, and perceptions** of the pre-release

16

center and the area. **They did not present any studies, police records, property valuations or any type of substantive evidence upon which their fears were based, which would lead a reasonable mind to conclude that the facility would be detrimental to the community's general welfare**. Although it had ample opportunity to do so at prior stages of these proceedings, the City, for whatever reason, failed to introduce any evidence to bolster the claims voiced by the objectors.

*Bureau of Corr.*, 532 A.2d at 14 (emphasis added; internal record citation omitted).

A review of the record evidence reveals that, like the objectors in *Bureau of Corrections*, Complainant offered nothing more than his personal opinion in seeking to establish his burden that West Penn's proposed herbicide use would harm his property and was, thus, unreasonable. Complainant opposed herbicide **spraying**, presented no evidence pertaining to the Cut Stump Application or potential harm therefrom and offered no scientific evidence or expert testimony.[19] Therefore, West Penn's expert testimony that the proposed Cut Stump Application was safe and reasonable was unrebutted, credible evidence.

This Court has held that "a court should not substitute its judgment for that of the Commission **when substantial evidence supports the Commission's decision** on a matter within the Commission's expertise." *UGI Utils., Inc. – Gas Div. v. Pa. Pub. Util. Comm'n*, 863 A.2d 144, 148 n.4 (Pa. Cmwlth. 2004) (emphasis added). However,

an agency's administrative expertise does not relieve it of the obligation to make factual findings 'supported by the substantial and legally credible evidence.' [*Pa. Labor Relations Bd. v.*] *Sand's Rest*[.] *Corp*[.], . . . 240 A.2d [801,]

---

[19] "[A]s a general rule, expert testimony is required where the issues require scientific or specialized knowledge or experience to understand." *Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 828-29 (Pa. Cmwlth. 2010). "Certain questions cannot be determined intelligently merely from the deductions made and inferences drawn from practical experience and common sense. On such issues, the testimony of one possessing special knowledge or skill is required in order to arrive at an intelligent conclusion." *Id*. at 829 (citation omitted).

17

805 [(Pa. 1968)]. Administrative expertise can be used to resolve conflicts in the testimony and to draw reasonable inferences from the facts of record. However, **an agency cannot use the specialized knowledge of its administrators as a substitute for evidence.**

*Kyu Son Yi, DVM v. State Bd. of Veterinary Med.*, 960 A.2d 864, 872 (Pa. Cmwlth. 2008) (emphasis added; citation omitted).

Herein, apart from describing his property's physical characteristics, Complainant failed to present **any** evidence that the proposed Cut Stump Application posed a risk to his water supply sufficient to render West Penn's proposed actions unreasonable.[20]   Any expertise that the Commission may have in vegetation management may not be used as "a substitute for [that] evidence." *Id*. Accordingly, Complainant did not meet his burden and substantial evidence does not support the Commission's decision sustaining Complainant's Complaint.[21]

For all of the above reasons, the Commission's October 2018 Order is reversed.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

_____

[20]Apart from the proximity of the wells to the area to be treated, the October 2018 Order does **not** describe the basis upon which the Commission concluded that the proposed Cut Stump Application and herbicides to be used would create a risk of contamination "too substantial to ignore[.]" R.R. at 709a.

[21] Given that the Commission's October 2018 Order is not supported by substantial evidence, this Court need not address West Penn's other issues.

18

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Penn Power Company,    :
                Petitioner   :
    :
         v.          :
    :
Pennsylvania Public Utility    :
Commission,    :   No. 1548 C.D. 2018
           Respondent   :

## O R D E R

AND NOW, this 2nd day of October, 2019, the Pennsylvania Public Utility Commission's October 25, 2018 order is reversed.

_____
ANNE E. COVEY, Judge