**DEPARTMENT OF TRANSPORTATION, Petitioner**

v.

**AGRICULTURAL LANDS CON-
DEMNATION APPROVAL
BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 14, 2010.

Decided Sept. 1, 2010.

Christopher J. Clements, Asst. Counsel in-Charge and Andrew S. Gordon, Chief Counsel, Harrisburg, for petitioner.

Leon H. Kline and Lois G. Kline, intervenors, pro se.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Department of Transportation (DOT) petitions for review of a final order of the Agricultural Lands Condemnation Approval Board (Board), which denied DOT's request to convert productive agricultural lands to transportation use by condemnation. We reverse.

By letter dated August 18, 2009, DOT requested a hearing before the Board for consideration of DOT's request to convert

by exercise of the power of condemnation, if necessary, productive agricultural lands to transportation use for the Lebanon County, Schaefferstown Bypass Project, State Route (S.R.) 501, Section 006, transportation improvement project (Project). Along with the application, DOT provided the Board with a Farmland Assessment Report. A hearing before the Board was held on September 29, 2009.

At the hearing, DOT presented the testimony of Douglas P. Murphy, DOT district project manager; L. Brian Hoover, project engineer and a board-certified engineer; and Douglas George, project manager and board-certified engineer. In opposition, Lois G. Kline, Leon H. Kline, and Andrew Kline (collectively, the Klines) testified.

Based upon the testimony and evidence presented, the Board made the following relevant findings of fact. The Project would realign approximately 1.6 miles of S.R. 501, a two-lane highway facility, in Lebanon County, to reroute traffic around the Village of Schaefferstown. DOT identified three Project needs:

(1) Reduce congestion along S.R. 501 within the Village of Schaefferstown
- Deficient Levels of Service (LOS) [1]
- Percentage of Through Traffic
- High Truck Percentages

(2) Improve safety along S.R. 501
- Geometric Deficiencies
- High Crash Rates

(3) Improve regional system continuity

Board's 10/19/2009 decision at 20; Reproduced Record (R.R.) at 185a, 248a.

The Project study area is approximately one mile wide and is predominantly pro-

ductive agricultural land, including prime farmland soils and farmland soils of statewide importance as defined by the Farmland Protection Policy Act of 1981 (Farmland Act).[2] In its review of agricultural lands proposed for condemnation, the Board is required to consider the Commonwealth's Agricultural Land Preservation Policy, 4 Pa.Code §§ 7.301–7.308, which intends to protect and preserve prime agricultural land which has been and continues to be in active agricultural use for the preceding three years. The study area includes 20 agricultural operations which utilize 32 parcels of productive agricultural land.

Seven alternatives were investigated as a means to develop and evaluate transportation options for the Project. These alternatives consisted of the No–Build Alternative, the Transportation System Management (TSM) Alternative, and Alternatives 1 through 5. If an alternative's impacts were determined by DOT to be excessive, the alternative was considered unreasonable and was not carried forward for further study. If the alternative was determined to not meet the Project needs, it was considered as not prudent and was not carried forward for further study.

DOT dismissed the No–Build Alternative, the TSM Alternative, and Alternatives 2 through 5 because they did not meet the Project needs and/or were unreasonable due to excessive environmental impacts. DOT's preferred alternative is Alternative 1. Alternative 1 begins at the southern end of the Project study area. The total length of Alternative 1 would be 1.32 miles with 1.2 miles of new construc-

1. Levels of service are a measure of traffic flow and congestion and are given a letter rating of A through F. Grades A, B, and C are considered acceptable; Grades D, E, and F are considered to be deficient.

2. Section 4201 of the Farmland Act, 7 U.S.C. § 4201, recognizes four categories of farmland soils: prime farmland soils, unique farmland soils, statewide important soils and local important soils.

tion. Alternative 1 would impact 17.57 acres of productive agricultural land, 14.89 acres of prime and statewide farmland soils, .65 acres of agricultural security areas, 4 farm operations, .02 acres of wetland areas, 2 stream crossings, 1.83 acres within the 100–year floodplain and .96 acres of forestland. Alternative 1 would also require 9 residential displacements, two commercial displacements, one bike path crossing and the taking of land in two National Register listed historic districts— Brendle Farms and Old Mill Road Historic District.

Alternative 1 directly and indirectly impacts the farming operations of the Klines. The Klines operate a full-time dairy and steer operation which contains approximately 257 acres of productive agricultural land, of which 202 acres are owned by the Klines and 55 acres are leased; corn and alfalfa are produced for livestock consumption. As to the Klines' farming operation, Alternative 1 would directly impact 3.8 acres of active crop land and 1 acre of active pasture land and would indirectly impact .7 acres of active pasture land. Approximately 70 individuals with the Schaefferstown community signed a petition opposing the Project as proposed in Alternative 1.

The Board found that DOT offered no testimony or other documentation regarding the 20–year projected deficient LOS as a result of the utilization of agricultural lands. DOT offered no testimony or other documentation regarding the increased traffic to S.R. 419 and 897 that will result as a consequence of the relocation of the eastern S.R. 501 intersection. DOT did not offer any testimony that the LOS at the western intersection of the Project study, which has the lowest LOS, will improve. The testimony and evidence presented by DOT does not indicate how the utilization of productive agricultural lands as proposed by Alternative 1 will improve the overall safety along S.R. 501; the improvement proposed for the areas identified as having the highest crash rates in excess of the state average do not require the utilization of productive agricultural lands. The testimony and evidence presented by DOT does not indicate how Alternative 1 will address the existing geometric deficiency associated with the presence of the unprotected objects such as utility poles, trees and signs that obstruct the clear zone of existing driveways, nor does it address the introduction of additional unprotected objects in the future. The Board found, based upon the testimony offered by the Klines, that the TSM Alternative or Alternative 5 could be further developed and refined to more reasonably and prudently address the Project needs. Based upon these findings, the Board concluded that DOT failed to present sufficient evidence that proposed Alternative 1 satisfies all Project needs.

By order dated October 19, 2009, the Board denied DOT's request to use condemnation to acquire all productive agricultural land located in Heidelberg Township, Lebanon County, needed to construct Alternative 1 as described in the Farmland Assessment Report. DOT filed an application for rehearing, which was denied. DOT then filed a petition for review with this Court.[3] Lois G. and Leon H. Kline

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S.

§ 704; *Northwestern Lehigh School District v. Agricultural Lands Condemnation Approval Board*, 126 Pa.Cmwlth. 325, 559 A.2d 978, *petition for allowance of appeal denied*, 524 Pa. 635, 574 A.2d 75 (1989). An adjudication cannot be in accordance with the law if it is

have intervened.[4]

DOT presents the following issues for our review:

1. Whether DOT met its burden of proof by a preponderance of evidence that there is no reasonable and prudent alternative to utilization of the lands in question other than Alternative 1 and is thus entitled to approval of its application.

2. Whether the Board failed to shift the burden of production to the Project opponent in this administrative proceeding involving technical matters of traffic study, design engineering and environmental impacts analysis.

3. Whether the Board's finding that Alternative 1 does not meet the needs DOT established for the Project is supported by substantial evidence.

4. Whether the Board exceeded its statutory duty by ignoring the record and denying approval to condemn because there are alternatives that, upon further comprehensive study and refinement, may be reasonable and prudent.

5. Whether the Board abused its discretion and violated DOT's due process rights in failing to grant DOT a rehearing to address the Board's

questions on Alternative 5, which were raised for the first time in its adjudication, and to present traffic data for areas outside of DOT's project needs.

■ First, DOT contends that the Board capriciously disregarded competent evidence and erred in denying approval of DOT's application where DOT met its burden of proof by a preponderance of evidence that there is no reasonable and prudent alternative to utilization of the lands in question other than Alternative 1. We agree.

■ The Board was established as an independent administrative board by Section 306 of the Administrative Code of 1929[5] (Code). The Board has jurisdiction over the condemnation of agricultural land for highway purposes[6] and disposal of solid or liquid waste material. Section 306(d) of the Code, 71 P.S. § 106(d); 4 Pa.Code § 7.304. Before "any agricultural lands, as classified by the Agricultural Soil Conservation Service of the United States Department of Agriculture, which lands are being used for productive agricultural purposes," can be condemned, the Board must "determine that there is *no reasonable and prudent alternative to the utilization of such lands for the project.*" Section 306(b) of the Code, 71 P.S. § 106(b) (em-

---

not decided on the basis of law and facts properly adduced; therefore, appellate review for the capricious disregard of material, competent evidence is an appropriate component of appellate consideration if such disregard is properly before the reviewing court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002). When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that

any reasonable person would have considered to be important. *Id.*

4. The Board has chosen not to participate in this appeal.

5. Act of April 9, 1929, P.L. 177, added by the Act of December 7, 1979, P.L. 478, 71 P.S. § 106.

6. This jurisdiction does not include activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curbs or reconstruction. Section 306(d)(1) of the Code, 71 P.S. § 106(d)(1).

phasis added). The purpose is to preserve and protect agricultural land and limit the power of condemnation. *See* 4 Pa.Code §§ 7.301—7.304.

■■■ The burden of showing that there is no reasonable and prudent alternative is on the applicant requesting the condemnation, in this case DOT. *See Northwestern Lehigh; Maryland and Pennsylvania Railroad Preservation Authority v. Agricultural Lands Condemnation Approval Board,* 704 A.2d 1149 (Pa. Cmwlth.1998).[7] The degree of proof required to establish a case before an administrative tribunal is the same degree of proof used in most civil proceedings, i.e., a preponderance of the evidence. *See Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission,* 134 Pa. Cmwlth. 218, 578 A.2d 600 (1990), *petition for allowance of appeal denied,* 529 Pa. 654, 602 A.2d 863 (1992). A preponderance of the evidence is "such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." *Sigafoos v. Pennsylvania Board of Probation and Parole,* 94 Pa.Cmwlth. 454, 503 A.2d 1076, 1079 (1986).

■■■ In this case, DOT requested condemnation approval from the Board to convert productive agricultural lands located in Heidelberg Township for transportation use. DOT had the burden of proving

that no reasonable and prudent alternative to utilization of agricultural lands exists. To be prudent, an alternative must meet the Project needs, i.e., address and improve the deficiencies that are a component of the need. To be reasonable, the alternative's impacts cannot be excessive. The goal of protecting farmlands is a legitimate consideration in assessing the prudence and reasonableness of various alternatives.

To this end, DOT presented seven alternatives through a reasoned methodology. DOT presented expert engineers and evidence identifying the project needs and detailing how each alternative would meet those needs and impact the agricultural areas. DOT conducted traffic studies to identify the problems to be solved by the Project. These studies identified predominant traffic movement having the greatest volume of traffic and highest percentage of truck traffic. The studies established unacceptable existing conditions. To solve the traffic problems, DOT's engineers analyzed seven alternatives. DOT's experts dismissed the No–Build Alternative, the TSM Alternative, and Alternatives 2 through 5 because they did not meet the Project needs and/or were unreasonable due to excessive environmental impacts.

Through the process of elimination, DOT's experts advanced Alternative 1 as its preferred alternative. DOT's experts testified that this alternative would satisfy

7. *Northwestern Lehigh* and *Maryland and Pennsylvania Railroad* involved farmland located within an "agricultural security area" under the Agricultural Area Security Law (AASL), Act of June 30, 1981, P.L. 128, *as amended,* 3 P.S. §§ 901–915. There is an additional element that must be shown when land within an agricultural security area is sought to be condemned for non-highway purposes, which is not the case here. Section 13(d)(2)(ii)(A) of the AASL, 3 P.S. § 913(d)(2)(ii)(A) (an applicant must also show that the condemnation would not have

an unreasonably adverse affect upon the preservation and enhancement of agriculture or municipal resources within the area). Both the AASL and Section 306 of the Code provide that condemnation for highway purposes will be approved only if the Board determines that there is no reasonable and prudent alternative to the utilization of agricultural lands. *See* Section 13(d)(2)(i) of the AASL, 3 P.S. § 913(d)(2)(i). Therefore, these cases are applicable to the instant matter with regard to burden.

DOT's stated Project needs while presenting the best balance of impacts to the environment as compared and contrasted with the other alternatives. DOT considered the interests of the entire community, not just the private interests of the Klines. DOT presented substantial evidence that Alternative 1 would reduce congestion in the village, improve safety along S.R. 501 by eliminating thru-traffic in the village and on S.R. 501 leading north to and south from the Eastern intersection, and would improve regional system continuity by routing the north/south thru traffic directly to the Western intersection without any need to turn.

DOT also presented evidence as to why TSM and Alternative 5—the two alternatives the Board believed warranted further exploration and development—were not prudent or reasonable.[8] Although the environmental impacts of Alternative 5 are reasonable, DOT presented evidence that Alternative 5 does not meet the Project needs and would more or less replicate an unacceptable condition that DOT is trying to fix. The TSM Alternative also failed to meet any of the Project needs because no traffic would be eliminated from the village and it would introduce a new signalized intersection in the middle of a 50 mph roadway and would require truck traffic to negotiate a 90 degree turn.

While the Klines advocated Alternative 4 and the TSM Alternative, the Klines did not present any expert testimony to refute the testimony given by DOT's experts that these alternatives failed to address the Project needs. While the Board found that DOT did not "conclusively establish" that its preferred alternative will reduce

congestion in the Village, the record "fails to persuasively establish" that DOT's preferred alternative will improve overall safety along Route 501, and that the record "does not establish to the satisfaction of the Board" that DOT's preferred alternative satisfied all Project needs, such was not DOT's burden to satisfy. R.R. at 21a, 22a, 23a. DOT had to establish that there is no reasonable and prudent alternative to utilization of the lands in question other than Alternative 1 by preponderance of the evidence. Based upon our review, DOT met this burden and the Board, in determining otherwise, capriciously disregarded the overwhelming evidence of record.

Next, DOT contends that the Board failed to shift the burden of production to the Project opponent in this administrative proceeding involving technical matters of traffic study, design engineering and environmental impacts analysis. We agree.

■ The term "burden of proof" is used to refer to two distinct burdens—the burden of production and the burden of persuasion. *Riedel v. County of Allegheny*, 159 Pa.Cmwlth. 583, 633 A.2d 1325 (1993). The burden of persuasion never leaves the party on whom it is originally cast, but the burden of production may shift during the course of the proceedings. *Id.* The burdened party cannot shift the burden of the production of evidence it has failed to establish. *Wilson v. Pennsylvania Railroad Company*, 421 Pa. 419, 219 A.2d 666 (1966).

■ While there are no cases or statutes directly addressing the type of evidence necessary to satisfy the burden of production in a condemnation proceeding before the Board, as a general rule, expert

---

8. There was no dispute that the No–Build Alternative and Alternative 2 and 3 were not reasonable and/or prudent alternatives. While the Klines advanced Alternative 4, DOT dismissed this due to its unreasonably excessive environmental impacts as it would impact six farm operations and would displace 35 residences and three businesses. The Board did not find Alternative 4 to be a more reasonable or prudent alternative.

testimony is required where the issues require scientific or specialized knowledge or experience to understand. *Young v. Department of Transportation,* 560 Pa. 373, 744 A.2d 1276 (2000) (expert testimony was required to define alleged negligence and establish a causal nexus between the failure to place warning signs several miles down the highway and the accident itself); *see Powell v. Risser,* 375 Pa. 60, 99 A.2d 454 (1953) (expert testimony is needed to show a deviation from proper and accepted medical practice); *Tennis v. Fedorwicz,* 140 Pa.Cmwlth. 7, 592 A.2d 116 (1991) (expert testimony is necessary to prove negligent design); *Storm v. Golden,* 371 Pa.Super. 368, 538 A.2d 61 (1988), *petition for allowance of appeal denied,* 524 Pa. 630, 574 A.2d 71 (1989) (expert must define what constitutes reasonable degree of care and skill related to legal practice); *Dion v. Graduate Hospital of the University of Pennsylvania,* 360 Pa.Super. 416, 520 A.2d 876, 881 (1987) (expert testimony is required to determine the adequacy of a drug manufacturer's warning when that warning is to the medical community, rather than the general public, and requires specialized skill or knowledge); *see also The Ainjar Trust v. Department of Environmental Protection,* 806 A.2d 482 (Pa. Cmwlth.2002) and *Marcon v. Department of Environmental Resources,* 76 Pa. Cmwlth. 56, 462 A.2d 969 (1983) (expert scientific evidence must be presented to prove serious and deleterious effect upon the environment). Certain questions cannot be determined intelligently merely from the deductions made and inferences drawn from practical experience and common sense. *Dion.* On such issues, the testimony of one possessing special knowledge or skill is required in order to arrive at an intelligent conclusion. *Id.* The only exception to this otherwise invariable rule is in cases where the matter under investigation is so simple as to be within the range of common knowledge, experience and comprehension of an ordinary layman. *Young; Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981); *Chandler v. Cook,* 438 Pa. 447, 265 A.2d 794 (1970).

 The condemnation of land for highway purposes involves technical matters of traffic studies, design engineering and environmental impact analysis. At risk is the safety of the travelling public and irreparable impacts to the community and environment. Therefore, an applicant seeking condemnation approval before the Board must produce expert evidence and testimony establishing that there is no reasonable and prudent alternative to the proposed utilization of agricultural land in order to satisfy its burden.

 To this end, DOT presented evidence including maps, photos, traffic studies, safety studies, comparative data, environmental impact studies, alternative analysis, and expert engineering testimony establishing the needs for the Project, identifying environmental features, developing alternatives. DOT's experts all testified that Alternative 1 meets the Project needs and is the most feasible of the seven alternatives studied while presenting the best balance of impacts to the environment. DOT's experts testified that there is no reasonable and prudent alternative to utilization of productive agricultural lands in question. The Board did not find that DOT's evidence was not credible. *See The Ainjar Trust; Marcon.* Therefore, this evidence constitutes legally sufficient evidence in support of DOT's preferred alternative.

 Once DOT satisfied its burden of production, the burden should have shifted to the Klines to produce competent evidence of the existence of a reasonable and prudent alternative to the utilization of

the lands in Alternative 1. While the Klines testified at the hearing and voiced their opinions as to their preferred alternatives, they themselves are not expert engineers and they did not present any expert engineering testimony or evidence to rebut the evidence presented by DOT. Their testimony, standing alone, was insufficient to refute the expert engineering evidence presented by DOT as the subject matter requires "special skill and training beyond the ken of ordinary laymen". *See Young*, 560 Pa. at 377–378, 744 A.2d at 1278 (quoting *Reardon v. Meehan*, 424 Pa. 460, 465, 227 A.2d 667, 670 (1967)).

 DOT further contends that the Board's finding that Alternative 1 does not meet the needs DOT established for the Project is not supported by substantial evidence. We agree.

Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Direnzo Coal Co. v. Department of General Services*, 825 A.2d 773 (Pa.Cmwlth.2003); *Hercules v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992); *Mrs. Smith's Frozen Foods v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth.382, 539 A.2d 11 (1988). Substantial evidence requires more than a scintilla of evidence or suspicion of the existence of a fact to be established. *Bobchock v. Unemployment Compensation Board of Review*, 105 Pa. Cmwlth. 645, 525 A.2d 463 (1987).

The Project needs as defined by DOT are to (1) reduce congestion along S.R. 501 within the Village of Schaefferstown by addressing deficient LOS, percentage of through traffic and high truck percentages; (2) improve safety along S.R. 501 by addressing geometric deficiencies and high crash rates; and (3) improve regional sys-

tem continuity. R.R. at 185a, 248a. DOT presented substantial evidence through expert testimony and evidence that Alternative 1 will meet these needs.

The Board, however, found that Alternative 1 did not meet the Project needs because:

63. [DOT] offered no testimony or other documentation regarding the 20–year projected LOS as a result of the utilization of agricultural lands. (Transcript, *passim*, FAR [9], *passim*)

64. [DOT] offered no testimony or other documentation regarding the increased traffic to S.R. 0419 and 0897 that will result as a consequence of the relocation of the eastern S.R. 0501 intersection. (Transcript, *passim*, FAR, *passim*)

65. [DOT] did not offer any testimony that the LOS at the western intersection of the Project study area, which currently has the lowest LOS, will improve; the FAR reveals that the project will remove 60% of the northwest traffic along the section of the road with the D LOS. (Transcript, *passim*, FAR, *passim*)

\* \* \*

67. The testimony and evidence presented by [DOT] does not indicate how Alternative 1 will address the existing geometric deficiency associated with the presence of unprotected objects such as utility poles, trees and signs that obstruct the clear zone of existing driveways. Nor does it address the introduction of additional unprotected objects in the future. (Transcript, *passim*, FAR, *passim*)

9. Farmland Assessment Report.

Board's 10/19/2009 decision at 16–17. However, these findings impose new Project needs, which were not established by DOT. The Klines did not offer any expert testimony or evidence that Alternative 1 does not address the Project needs as established by DOT. The Board also found that DOT failed to establish how the utilization of productive agricultural lands as proposed by Alternative 1 will improve the overall safety along S.R. 501. To this end, DOT presented expert testimony and evidence that Alternative 1 will remove the predominant thru-traffic movement from the village and will improve regional system continuity by routing the north/south thru traffic directly to the Western intersection without any need to turn. R.R. at 49a–56a, 253a, 259a. We, therefore, conclude that the Board's findings that Alternative 1 does not meet the Project needs are not supported by substantial evidence.

■■■ DOT further contends that the Board exceeded its statutory duty by ignoring the record and denying approval to condemn because there are alternatives that, upon further comprehensive study and refinement, may be reasonable and prudent. We agree.

As discussed above, DOT had the burden of establishing by a preponderance of the evidence that there is no reasonable and prudent alternative to utilization of productive agricultural lands in Alternative 1. DOT satisfied this burden by presenting its alternative analysis through expert testimony. DOT's experts explained why Alternative 5 and TSM were not prudent because they fail to meet the Project needs identified by DOT. DOT's experts opined that Alternative 5 would more or less re-

plicate an unacceptable condition that DOT is trying to fix and the TSM Alternative would not eliminate any traffic from the village. The Board's finding that Alternatives 5 and TSM warranted further exploration and development is not supported by competent evidence of record. While it is tempting to suggest additional alternative routes, such is not the statutory role of the Board. Section 306 of the Code charges the Board with determining whether there *is* a reasonable and prudent alternative to the utilization of agricultural lands. A full range of choices were selected through reasoned methodology and considered in good faith. Based upon the evidence presented, DOT established that there is no reasonable and prudent alternative to the use of agricultural lands as proposed in Alternative 1.

For these reasons, we conclude that DOT met its burden under the Code. The Board erred in denying DOT's condemnation request.[10] Accordingly, we reverse the order of the Board.[11]

## ORDER

AND NOW, this 1st day of September, 2010, the order of the Agricultural Lands Condemnation Approval Board, at Docket No. AG–2009–18, dated October 19, 2009, is REVERSED.

10. Board approval is just one step of the condemnation process. DOT must also file a declaration of taking. *White v. Department of Transportation,* 738 A.2d 27 (Pa.Cmwlth.

1999), *aff'd* 563 Pa. 255, 759 A.2d 1273 (2000).

11. In light of this disposition, we need not reach the remaining issue raised by DOT.