IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Red Lion Municipal Authority,       :
                                              :
                  Petitioner     :
                                              :
                v.                 : No. 186 C.D. 2019
                                      : Argued: September 9, 2019
Pennsylvania Public Utility     :
Commission,                     :
                                              :
                  Respondent :


BEFORE:     HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED: October 29, 2019


          Red Lion Municipal Authority (Red Lion) petitions for review of the order of the Pennsylvania Public Utility Commission (PUC) denying Red Lion's exceptions to an administrative law judge's (ALJ) Initial Decision; granting Red Lion's request for clarification of the Initial Decision; and modifying the Initial Decision. The Initial Decision had approved the application of The York Water Company (York Water) to enter an Emergency Interconnect Agreement with Dallastown-Yoe Water Authority (DYWA) and dismissed Red Lion's challenge to the Emergency Interconnect Agreement. Red Lion also petitions for review of the PUC's subsequent order denying its application for reconsideration of the PUC's initial order with respect to the ALJ's Initial Decision. We affirm.

The following are the relevant facts as found by the PUC.[1] York Water is a public utility that supplies water and wastewater services to 66,100 customers in York and Adams Counties. DYWA is a municipal authority organized under the former Municipality Authorities Act of 1945 (Act),[2] and was created by Dallastown and Yoe Boroughs to oversee and manage their water services, providing water to approximately 4,300 customers. Red Lion is a municipal authority created under the Act to purchase the assets of the former Red Lion Water Company and to provide water service to Red Lion Borough and adjacent municipalities, including Dallastown and Yoe Boroughs. According to Red Lion, it has exclusively supplied water for DYWA since 1959, and the most recent May 8, 2013 Water Sales Agreement is for another 10-year term.

On May 10, 2017, DYWA executed the Emergency Interconnect Agreement with York Water to provide an additional supply of water for resale to its customers. Under the agreement, York Water will build a 12-inch main extension 600-feet long from its existing distribution system to connect to DYWA's system. DYWA will build a 6-inch water main extension to the interconnection location. York Water will also build a booster station with

---

[1] "The PUC is the ultimate fact-finder, [that] determines the weight and credibility of the evidence presented, and this Court acknowledges the PUC's findings are conclusive on appeal, unless they are not supported by substantial evidence." *Kviatkovsky v. Pennsylvania Public Utility Commission*, 618 A.2d 1209, 1211 (Pa. Cmwlth. 1992) (citation omitted). "Substantial evidence is commonly defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1212 (citation omitted).

[2] Act of May 2, 1945, P.L. 382, *as amended formerly*, 53 P.S. §§301-322, repealed by Section 3 of the Act of June 19, 2001, P.L. 287. *See now* Municipality Authorities Act, 53 Pa. C.S. §§5601-5623.

chemical feed systems, data controls, and back-up power supply to DYWA. The total cost of the project is $726,049.

The Emergency Interconnect Agreement also states that York Water will only supply water to DYWA to the extent called upon by DYWA, so that DYWA is not required to draw a minimum amount of water. However, if called upon, York Water could supply DYWA with a maximum of 250,000 gallons of water per day at a flow rate not to exceed 200 gallons per minute. Because DYWA is not paying any upfront costs, York Water will bill DYWA monthly for a minimum of not less than 3,000,000 gallons of water, but no more than 250,000 gallons per day, whether or not DYWA uses the Emergency Interconnect Agreement in a given month. Under its current tariff rates, and based on a minimum of 3,000,000 gallons per month, York Water estimates that DYWA will pay approximately $248,000 annually and that it will incur $69,596 in annual expenses exclusive of a return on investment under the agreement.

On June 16, 2017, York Water filed an application with the PUC to certify the Emergency Interconnect Agreement pursuant to Section 507 of the Public Utility Code (Code).[3] On July 24, 2017, Red Lion filed a formal complaint

---

[3] 66 Pa. C.S. §507. Section 507 of the Code states that "[e]xcept for a contract between a public utility and a municipal corporation to furnish service at the regularly filed and published tariff rates, no contract or agreement between any public utility and any municipal corporation shall be valid unless filed with the PUC," and that the PUC "may, prior to the effective date of such contract or agreement, institute proceedings to determine the reasonableness, legality or any other matter affecting the validity thereof." Section 507 also states that "[u]pon the institution of such proceedings, such contract or agreement shall not be effective until the [PUC] grants its approval thereof." In turn, Section 508 provides:

> The [PUC] shall have power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or

**(Footnote continued on next page…)**

3

with the PUC and alleged, *inter alia*, that the Emergency Interconnect Agreement

violated Section 4.3 of York Water's PUC-approved tariff (Tariff Rule 4.3)[4] and

---

**(continued…)**

hereafter entered into between any public utility and any person, corporation, or municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth. Whenever the [PUC] shall determine, after reasonable notice and hearing, upon its own motion or upon complaint, that any such obligations, terms, or conditions are unjust, unreasonable, inequitable, or otherwise contrary or adverse to the public interest and the general well-being of this Commonwealth, the [PUC] shall determine and prescribe, by findings and order, the just, reasonable, and equitable obligations, terms, and conditions of such contract. Such contract, as modified by the order of the [PUC], shall become effective 30 days after service of such order upon the parties to such contract.

66 Pa. C.S. §508.

[4] Tariff Rule 4.3 states:

When a York County municipality or authority has exhausted all alternatives to obtaining an adequate high-quality source of supply, [it] may apply to [York Water] for the purchase of water. Upon the execution of an agreement satisfactory to [York Water], [York Water] will supply water to the municipality or authority for resale within the service boundaries of the municipality or authority. [York Water] will bill the municipality or authority at [York Water's] single-point meter rate where monthly the number of customers of the municipality or authority times 1200 gallons will be billed at the first block rate and any remainder consumption will be billed at the regular block rate or rates.

Reproduced Record (R.R.) at 184a.

4

that it was an ordinary water purchase agreement. On August 15, 2017, Red Lion filed a petition to intervene in the application.

On August 18, 2017, Red Lion filed an amended complaint and again asserted that the Emergency Interconnect Agreement violates York Water's Tariff Rule 4.3. Reproduced Record (R.R.) at 203a-204a. Red Lion also alleged that the agreement is a bulk water purchase agreement and that it violates Section 1501 of the Code[5] because the introduction of York Water's chloramine-treated water into DYWA's free-chlorine-treated water supply will negatively impact the water chemistry and stability of DYWA's water system. *Id.* at 204a-205a. Red Lion further alleged that the Emergency Interconnect Agreement is silent as to how a joint supervisory control and data acquisition (SCADA) system will be established to assure safe and consistent water supply and pressure among the three different water systems. *Id.* at 206a.

---

[5] 66 Pa. C.S. §1501. Section 1501 states, in pertinent part:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility.

On September 7, 2017, York Water filed an answer to the amended complaint, with new matter and preliminary objections, that denied that the Emergency Interconnect Agreement violates Tariff Rule 4.3 or that it constitutes a bulk water purchase agreement. R.R. at 220a-230a. York Water also argued that the PUC is without jurisdiction to interpret or enforce the May 8, 2013 Water Sales Agreement between DYWA and Red Lion or Red Lion's issues with the quality of DYWA's water supply. *Id.* at 224a-225a. York Water also preliminarily objected because Red Lion lacked standing to raise claims of unreasonable service on behalf of DYWA or its customers. *Id.* at 231a-246a. Red Lion filed an answer to York Water's preliminary objections and a PUC ALJ denied the preliminary objections. *Id.* at 247a-271a.[6]

Four witnesses testified before the ALJ, and exhibits were submitted, at a January 23, 2018 hearing. Joseph Hand, York Water's Chief Operating Officer, testified that he is responsible for the day-to-day company operations. R.R. at 78a. He outlined the system to be constructed under the Emergency Interconnect Agreement, including the specifications and allocation of costs, and stated that York Water had enough water supply available to meet its commitment. *Id.* at 78a-80a. He testified that the Pennsylvania Department of Environmental Protection (DEP) encourages community water suppliers to maintain more than one source of water supply. *Id.* at 80a. He stated that Red Lion adds fluoride to its water while York Water does not, and that York Water uses chloramines to disinfect its water, but that Red Lion uses free chlorine. *Id.* Hand testified that York Water has supplied water to 7 municipalities over the last 25 years, including

---

[6] In September 2017, the matters were consolidated for disposition without objection at a Prehearing Conference.

3 with chorine-treated water, and that there have never been any issues regarding the blending of supplies. *Id.*

Mark Snyder, York Water's Vice President of Engineering, testified that he oversees the analysis, planning, engineering, and construction activities for its capital projects. R.R. at 81a. He outlined the connections and pumping station for the system supply, and stated that the results of hydraulic analysis showed that the emergency interconnect will not negatively affect the hydraulics of York Water's system, DYWA's system, or Red Lion's system. *Id.* at 82a. He stated that communications between the Red Lion system and DYWA system via DYWA's SCADA system will remain unchanged after the emergency interconnect is completed. *Id.*

Connie Stokes, Dallastown Borough's and DYWA's Manager, testified that DYWA customers have complained of issues with their water including discoloration, and that between December 4, 2016, and July 11, 2017, Red Lion's water supplied to DYWA's Park Street Tanks was below that which was contractually required. R.R. at 82a. She stated that in 2009, there was a system-wide turbidity issue in Red Lion's water system that affected all consumers supplied by Red Lion. *Id.* She testified that DYWA determined that it would be in its best interest and that of its customers to have an additional source of water supply. *Id.* She stated that one of the main benefits of having an emergency interconnect with York Water is the existence of an alternative source when Red Lion cannot supply its contractually obligated minimum amount of water. *Id.* at 83a. She testified that DYWA determined that there would not be an issue with receiving the differently treated water supplies so long as York Water and Red

7

Lion comply with their permits and DYWA monitors and controls the two supplies in its system. *Id.*

Keith Kahwajy, Red Lion's Water and Sewer Superintendent, testified that he is not a licensed engineer and does not have any engineering or chemistry degrees, and has no experience in operating, managing or overseeing an emergency interconnect system. R.R. at 83a. He stated that undetected or unrepaired system leaks would cause the tank levels in DYWA's system to fall below 77 feet, and that tank levels would have to fall significantly below 77 feet to be a safety concern. *Id.* at 84a. He testified that DYWA is required to notify Red Lion of any leaks or repairs so that he can record the information on the daily water usage spreadsheet and use the information for leak detection and other potential problems in the system. *Id.* He stated that there has never been an issue with Red Lion's ability to supply water to meet the demands of DYWA's customers, and that although its system is not connected to an alternative supply source, it has the option of using water from both Beaver Creek and the Susquehanna River if a problem arises with its main source of supply. *Id.*

On June 7, 2018, the ALJ issued an Initial Decision in which he concluded:

> The request of York [Water] and DYWA for an emergency interconnect agreement is approved because it is reasonable and in the public interest. The agreement satisfies Sections 507 and 508 of the [Code] because it will provide DYWA with more than one source of supply, as is encouraged by the DEP. York [Water] and DYWA are commended for having the foresight to enter into this agreement so that DYWA can be prepared in the event of a problem with DYWA's lone source of water supply. In contrast, the complaint filed by Red Lion will be dismissed because Red Lion has failed to demonstrate that the proposed emergency interconnect in anyway

8

violates the [Code], a [PUC] order or regulation or a [PUC]-approved tariff of the company.

R.R. at 104a. Accordingly, the ALJ granted York Water's application and dismissed Red Lion's amended complaint. *Id.* at 106a. On July 6, 2018, Red Lion filed exceptions[7] to the ALJ's Initial Decision and sought clarification of the decision.

On September 20, 2018, the PUC issued an Opinion and Order disposing of Red Lion's exceptions. R.R. at 8a-37a. The PUC rejected Red Lion's first exception that York Water satisfied its burden of proving that the Emergency Interconnect Agreement is reasonable and in the public interest. *Id.* at 24a-28a. In rejecting this exception, the PUC explained:

> [W]e note that all the issues Red Lion raised in its Exception No. 1 have already been considered and rejected by the ALJ in his Initial Decision. Here, we concur with the ALJ's conclusion that York Water satisfied its burden to demonstrate that the [Emergency] Interconnect Agreement is reasonable and in the public interest. We are not convinced by the arguments set forth by Red Lion to support its position that the agreement is not an emergency interconnect agreement but rather a bulk water sales agreement.
>
> We find no merit in Red Lion's argument that the [Emergency] Interconnect Agreement is a bulk water sales agreement because the word "emergency" is only referenced in passing in the agreement. We agree with York Water that the agreement provides an additional source of water supply to DYWA in case of an interruption to Red Lion, currently the only other source to provide water to DYWA. Further, the record is clear that DEP requires water utilities to have more than one

---

[7] Section 5.533(a) of the PUC's regulations states, "In a proceeding, exceptions may be filed by a party and served *within 20 days* after the initial . . . decision is issued *unless some other exception period is provided*." 52 Pa. Code §5.533(a) (emphasis added).

source of water supply. And as noted by DYWA, the DEP, has, in the past, encouraged DYWA to secure an additional water provider. We believe the [Emergency] Interconnect Agreement provides DYWA the ability to acquire an additional source of water supply in case of an emergency impacting DYWA's current and only source of water supply. We also agree that while DYWA may never take advantage of the emergency interconnect, the fact that such an agreement is in place and will be available when the opportunity presents itself compels us to approve the [Emergency] Interconnect Agreement to protect the best interest of the public. As such, we shall deny Red Lion's Exception No. 1.

*Id.* at 27a-28a.

The PUC also rejected Red Lion's second exception, explaining:

Here, Red Lion's argument is based on a statement made by DYWA's Manager that DYWA did not explore, let alone exhaust, any alternatives to obtaining an inadequate high-quality source of water prior to entering into an agreement with York Water. The ALJ correctly determined that, as the party with the burden of proof, Red Lion needed to present more evidence than just relying on Ms. Stokes' comment. Therefore, we agree with the ALJ's determination that the comment made by Ms. Stokes is not substantial evidence to support Red Lion's argument because more is required than a mere trace of evidence or a suspicion of the existence of a fact sought to be established. We also acknowledge York Water's argument that it is the only other feasible water supplier alternative available to DYWA and the only certificated water utility at the proposed point of interconnection or within the general vicinity of DYWA's lower pressure zone. In our opinion, Red Lion has not presented sufficient evidence to refute this claim; nor has Red Lion presented any viable alternative water supplier located at the proposed point of interconnection or within the general vicinity of DYWA's lower pressure zone. Therefore, we conclude that Red Lion has failed to satisfy its burden of proof to show that York Water violated the Code, a [PUC] Order or Regulation, or its

10

[PUC]-approved Tariff, when it entered into the instant emergency interconnect agreement with DYWA. As such, Red Lion's Exception No. 2 is hereby, denied.

R.R. at 32a-33a (citation omitted).

Finally, with respect to Red Lion's clarification request, the PUC stated:

> Upon review, we shall grant Red Lion's request for clarification to the extent that Red Lion is requesting that we clarify in this instant proceeding that our review of this matter is limited to the [Emergency] Interconnect Agreement and not the [2013] Water Sales Agreement [between Red Lion and DYWA]. We note that [we] do[] not have the authority to interpret, enforce or adjudicate claims regarding a contract between private, non-jurisdictional entities or municipalities. *See*, *Pettko v.* [*Pennsylvania American Water Company*], 39 A.3d 473, 478 n.9 (Pa. Cmwlth. 2012) ("[T]here can be no dispute that the courts of common pleas have subject matter jurisdiction over common law claims such as conversion and breach of contract involving private individuals and businesses."); *Adams v.* [*Pennsylvania Public Utility Commission*], 819 A.2d 631, 635 (Pa. Cmwlth. 2003) ("[T]he PUC lacks jurisdiction over private contractual disputes.").

> Here, the matter before the [PUC] is the "Emergency Interconnect Agreement" between York Water and DYWA[.] Pursuant to Section 507 of the Code, [] we have the authority to review the [Emergency] Interconnect Agreement. However, we are not authorized to review the Water Sales Agreement as both municipalities involved are non-jurisdictional entities. Consequently, our review in the instant proceeding is limited to the [Emergency] Interconnect Agreement and not the Water Sales Agreement. Accordingly, we shall grant Red Lion's request and clarify, to the extent any clarification is needed, that our review in the instant proceeding does not make any determination regarding the Water Sales Agreement as that agreement is outside the purview of [the PUC].

11

Also, based on our review of the [Emergency] Interconnect Agreement, we find it to be reasonable and in the public interest. Therefore, we shall approve the [Emergency] Interconnect Agreement between York Water and DYWA.

R.R. at 34a-35a.

Accordingly, the PUC issued an order: (1) denying Red Lion's exceptions to the ALJ's Initial Decision; (2) granting Red Lion's request for clarification to the extent that it is limited to the Emergency Interconnect Agreement and not the Water Sales Agreement; (3) adopting, as modified, the ALJ's Initial Decision; (4) dismissing Red Lion's Amended Formal Complaint; (5) approving the Emergency Interconnect Agreement between York Water and DYWA; and (6) closing the record in the matter. R.R. at 36a-37a.[8]

On October 5, 2018, Red Lion filed a petition for reconsideration and a stay that the PUC granted on October 19, 2018. On January 17, 2019, the PUC addressed the merits of the petition for reconsideration and a stay at a public meeting and denied the petition, essentially reaffirming its September 20, 2018 Order.[9] Red Lion then filed the instant petition for review.[10]

---

[8] On October 22, 2018, Red Lion filed a petition for review of the PUC's September 20, 2018 order, which was docketed in this Court at No. 1417 C.D. 2018. However, the notice of appeal was dismissed as inoperative by this Court's October 25, 2018 order pursuant to Pa. R.A.P. 1701(b)(3) (providing that the PUC's grant of reconsideration rendered inoperative the petition for review and that the time for filing a petition for review begins to run anew from the date of the entry of a subsequent PUC decision on reconsideration).

[9] With respect to its disposition of Red Lion's reconsideration request, the PUC outlined the legal standards to be applied:

The Code establishes a party's right to seek relief following the issuance of our final decisions pursuant to Subsection 703(f), relating to rehearing, as well as Subsection 703(g), relating to the rescission and amendment of orders. 66 Pa. C.S. §703(f) and

**(Footnote continued on next page…)**

12

§703(g).  Such requests for relief must be consistent with Section 5.572 of our Regulations, relating to petitions for relief following the issuance of a final decision.  52 Pa. Code §5.572.

The standards for granting a Petition for Reconsideration were set forth in *Duick v. Pennsylvania Gas and Water Company*, 56 Pa P.U.C. 553[, 559] (1982):

A Petition for Reconsideration, under the provisions of 66 Pa. C.S. §703(g), may properly raise any matters designed to convince the [PUC] that it should exercise its discretion under this Code section to rescind or amend a prior order in whole or in part.  In this regard we agree with the Court in [*Pennsylvania Railroad Co. v. Pennsylvania Public Service Commission*, 179 A. 850, 854 (Pa. Super. 1935)], wherein it was stated that "[p]arties . . ., cannot be permitted by a second motion to review and reconsider, to raise the same questions which were specifically decided against them . . . ."  What we expect to see raised in such petitions are new and novel arguments, not previously heard, or considerations which appear to have been overlooked by the [PUC].

R.R. at 46a-47a.

In support of its assertion that the Emergency Interconnect Agreement was actually a bulk water sales agreement, Red Lion relied upon, *inter alia*, York Water internal emails and the minutes of York Water's Board of Director's June 26, 2017 meeting that were not previously made part of the record.  *See* R.R. at 52a.  York Water argued that the PUC's consideration of this extra-record evidence was improper.  *See id.* at 54a.  The PUC ultimately determined:

Red Lion asserts a sixth argument pertaining to alleged contacts between York Water and DYWA which were not raised previously.  Specifically, Red Lion asserts arguments regarding York Water's internal emails and minutes of York Water's June 26, 2017 Board of Directors meeting.  These documents are not in the record and Red Lion has offered no excuse for its failure to present this evidence prior to the close of [the] record.  We agree with York Water that Red Lion has failed to establish in this

**(Footnote continued on next page…)**

13

In this appeal, Red Lion claims that the PUC erred in: (1) determining that the Emergency Interconnect Agreement between York Water and DYWA is legal, reasonable, and in the public interest under Sections 507 and 508 of the Code; (2) determining that Red Lion did not meet its burden of proving that the Emergency Interconnect Agreement is illegal, unreasonable, and that its approval is not in the public interest; and (3) denying Red Lion's motion for reconsideration.[11]

---

**(continued…)**

> proceeding that this evidence is newly discovered or constitutes a change in circumstances. Because Red Lion is attempting to reference this new evidence in support of its argument, and there has been no good cause shown for considering this extra-record evidence, we shall decline to rely upon it for purposes of reaching a final determination in this proceeding pursuant to Section 5.431 of our Regulations, 52 Pa. Code §5.431. *See also*, *Hess v. Pa. PUC*, 107 A.3d 246, 265-66 (Pa. Cmwlth. 2014).

*Id.* at 63a. *See also* Section 5.243(e) of the PUC's regulations, 52 Pa. Code §5.243(e) ("A party will not be permitted to introduce evidence during a rebuttal phase which: (1) Is repetitive[;] (2) Should have been included in the party's case-in-chief[; and] (3) Substantially varies from the party's case-in-chief."); Section 5.431(b), 52 Pa. Code §5.431(b) ("After the record is closed, additional matter may not be relied upon or accepted into the record unless allowed for good cause shown by the presiding officer or the [PUC] upon motion.").

[10] "This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, or whether constitutional rights were violated." *Pennsylvania State University v. Public Utility Commission*, 988 A.2d 771, 777 n.15 (Pa. Cmwlth. 2010).

[11] We consolidate Red Lion's appellate claims for the sake of clarity.

14

**I.**

Red Lion first claims that the PUC erred in determining that the Emergency Interconnect Agreement between York Water and DYWA is legal, reasonable, and in the public interest under Sections 507 and 508 of the Code. Specifically, Red Lion contends that Section 332(a) of the Code[12] required York Water, as the applicant for approval of the Emergency Interconnect Agreement, to shoulder the burden to prove that the obligations, terms or conditions of the agreement are reasonable and legal and that approval is in the public interest consistent with Sections 507 and 1501 of the Code and Tariff Rule 4.3,[13] and that the PUC erred in prematurely shifting the burden of proof to Red Lion to rebut the legality, reasonableness, and public interest of the agreement. Red Lion contends that in doing so, the PUC capriciously disregarded York Water's uncontradicted evidence that the agreement violates Tariff Rule 4.3 because DYWA may only enter such an agreement *after* it has "exhausted all alternatives to obtaining an adequate high-quality source of supply." R.R. at 210a. The evidence demonstrates that DYWA has a safe and adequate supply from Red Lion under the 2013 Water Supply Agreement and York Water did not require DYWA to exhaust all other alternatives prior to executing the Emergency Interconnect Agreement. The evidence also establishes that although Red Lion has never had a problem with supplying adequate water, it has alternative supply sources from both Beaver Creek and the Susquehanna River. *Id.* at 84a.

---

[12] 66 Pa. C.S. §332(a). Section 332(a) states, "Except as may be otherwise provided in section 315 (relating to burden of proof) or other provisions of this part or other relevant statute, the proponent of a rule or order has the burden of proof."

[13] Tariff Rule 4.3 has the force and effect of law. *Brockway Glass Co. v. Pennsylvania Public Utility Commission*, 437 A.2d 1067, 1070 (Pa. Cmwlth. 1981).

Additionally, Red Lion asserts that the Emergency Interconnect Agreement violates Section 1501 because the introduction of York Water's chloramine-treated water into DYWA's free-chlorine-treated water supply will negatively affect the water chemistry and the stability of DYWA's water system, and it does not address the establishment and implementation of a SCADA system to assure safe and consistent water supply and pressure among the three different water systems. Further, the PUC erred in failing to look past the title of the agreement and examine its contents, which provide that it really acts as a bulk water sales agreement that can only serve a fraction of DYWA's customers and is prohibited by Section 4.1 of the 2013 Water Sales Agreement.

Finally, Red Lion submits that the PUC applied the incorrect standard in determining that the Emergency Interconnect Agreement is in the public interest by failing to consider that the emergency interconnect is unnecessary because Red Lion's service is adequate to cover all of DYWA's customers; the water supplied under the interconnect agreement will only serve a fraction of DYWA's customers; and yet all of DYWA's customers are bearing the cost under the agreement. Moreover, the PUC abdicated its responsibility to reach its own public interest determination notwithstanding DEP's policy regarding emergency interconnect agreements with more than one supplier.

However, Sections 102 and 501(b) of the Code, 66 Pa. C.S. §§102, 501(b), confer on the PUC the power to supervise and regulate public utilities in Pennsylvania. Sections 1302 and 1308, 66 Pa. C.S. §§1302, 1308, grant the PUC the authority to review and approve tariffs. Section 507 merely provides a mechanism by which a public utility may seek an exception to tariff rules, and the PUC may approve a contract for service at a rate other than the tariff. The relevant

16

inquiry in a case such as this is whether the contract is reasonable and in the public interest and is within the PUC's discretion. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 33 A.2d 641, 642 (Pa. Super. 1943).

The credited evidence shows that, at present, Red Lion is DYWA's only source of a water supply. R.R. at 69a. If Red Lion's water quality or quantity diminishes, DWYA would experience an interruption in service during which it could not meet the needs of its customers. *Id.* at 70a. The evidence also shows that DEP encourages water suppliers to maintain more than one source of supply including interconnections with other systems. *Id.* at 69a-70a. Likewise, the PUC encourages management practices such as the interconnection of water systems that enhance customer benefits. *See, e.g.*, Section 69.721(a) of the PUC's regulations, 52 Pa. Code §69.721(a) ("The [PUC] believes that further consolidation of water and wastewater systems within this Commonwealth may, with appropriate management, result in greater environmental and economic benefits to customers. The regionalization of water and wastewater systems through mergers and acquisitions will allow the water industry to institute better management practices and achieve greater economies of scale.").

DYWA presented evidence that it has experienced issues with Red Lion's supply in the past. R.R. at 334a. DYWA determined that, based on the issues that it has experienced with Red Lion's supply, it is in the best interest of its customers to have an additional source. *Id.* at 335a. The PUC agreed with the ALJ and DYWA that the Emergency Interconnect Agreement with York Water is reasonable and in the public interest. *Id.* at 58a, 69a. The evidence also shows that although the agreement with York Water only affects a portion of DYWA's customers, during a period of interruption it can divert the remaining supply from

17

Red Lion to the other customers. *Id.* at 498a-499a. Thus, there is ample substantial evidence from the witnesses presented at the hearing to support the PUC's conclusion that the agreement is reasonable and in the public interest and should be approved.

Contrary to its assertion, the PUC did not "ignore" the evidence presented by Red Lion. Rather, the PUC does not have jurisdiction over the services provided and rates charged by municipal authorities operating under the Municipality Authorities Act, 53 Pa. C.S. §§5601-5623, because Section 5607(d)(9) of that statute vests jurisdiction over such matters in the courts of common pleas. 53 Pa. C.S. §5607(d)(9)[14] As a result, the PUC cannot review DYWA's consideration of alternative sources or whether the Emergency Interconnect Agreement violates the 2013 Water Sales Agreement. Likewise, Section 1501 of the Code does not confer PUC jurisdiction over water disinfection methods such as the use of chloramines versus chlorine, which is within the jurisdiction of the DEP. *Pickford v. Pennsylvania Public Utility Commission*, 4 A.3d 707, 714-15 (Pa. Cmwlth. 2010). Further, the PUC can properly bifurcate and decide the issue within its jurisdiction, *i.e.*, whether the Emergency Interconnect Agreement is reasonable and in the public interest.

---

[14] Specifically, Section 5607(d)(9) states, in relevant part:

> Any person questioning the reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety and reasonableness of the authority's services, including extensions thereof, may bring suit against the authority in the court of common pleas of the county where the project is located or, if the project is located in more than one county, in the court of common pleas of the county where the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction to determine questions involving rates or service.

18

In sum, there is ample substantial evidence demonstrating: (1) an alternative source of water supply will benefit DYWA and its customers; (2) the minimum charge under the Emergency Interconnect Agreement will meet DYWA's goals and protect York Water's customers; (3) there will be no operational issues resulting from the emergency interconnect; and (4) there will be no issues with the blending of York Water's and Red Lion's differently-treated water supplies. R.R. at 28a, 57a-58a, 61a-62a, 273a, 276a-278a, 278a-279a, 284a, 360a-367a, 389a, 394a. Moreover, the PUC properly found that the agreement is permissible under the Water Sales Agreement, *id.* at 27a-28a, 57a, and does not violate Tariff Rule 4.3 because "[m]atters relating to the tariff . . . are peculiarly within the expertise of the [PUC]." *County of Erie v. Verizon North, Inc.*, 879 A.2d 357, 364 (Pa. Cmwlth. 2005). *See* R.R. at 28a-33a, 57a-59a. Moreover, the PUC expressly evaluated the benefits of the proposal, including the benefits to DYWA's customers, and rejected Red Lion's claims in determining that the agreement was in the public interest. R.R. at 24a-28a, 56a-63a.

## II.

Red Lion next claims that the PUC erred in determining that Red Lion did not meet its burden of proving that the Emergency Interconnect Agreement is illegal and unreasonable, and that its approval is not in the public interest. Red Lion asserts that assuming that York Water established a *prima facie* case under Section 507, the PUC erred in determining that Red Lion did not sustain its burden of proving[15] that the Emergency Interconnect Agreement is illegal, unreasonable,

---

[15] As this Court has stated:

**(Footnote continued on next page…)**

and not in the public interest.  DYWA agreed in Section 4.1 of the 2013 Water Sales Agreement to purchase its water supply from Red Lion unless Red Lion is unable to do so due to a force majeure or to purchase water for an emergency interconnect.  R.R. at 124a.  Red Lion contends that, as a result, the Emergency Interconnect Agreement clearly violates this provision because it acts as a bulk water sales agreement as evidenced by:  (1) the language of the agreement itself; (2) Ms. Stokes' testimony that DYWA intends to use it as a bulk purchase agreement; and (3) the consequences effectuated by the agreement.

However, under Section 332(a) of the Code, "the proponent of a rule or order has the burden of proof."  66 Pa. C.S. §332(a).  York Water was the proponent and bore the burden of proof with respect to the application for Section 507 approval.  Likewise, Red Lion bore the burden of proof with respect to the complaint that York Water violated Tariff Rule 4.3 and Section 1501.  Regarding its intervention in York Water's application proceeding, Red Lion only had the secondary burden of production, which shifted to Red Lion after York Water had established its *prima facie* case.  After York Water sustained its initial burden of proving that the Emergency Interconnect Agreement is reasonable and in the public interest, as required by Section 507, the PUC determined that Red Lion

**(continued…)**

> The term "burden of proof" is used to refer to two distinct burdens—the burden of production and the burden of persuasion. The burden of persuasion never leaves the party on whom it is originally cast, but the burden of production may shift during the course of the proceedings.  The burdened party cannot shift the burden of the production of evidence it has failed to establish.

*Department of Transportation v. Agricultural Lands Condemnation Approval Board*, 5 A.3d 821, 828 (Pa. Cmwlth. 2010) (citations omitted).

failed to present sufficient credible evidence to sustain the shifted burden of production to refute the reasonableness of the agreement and the resultant public benefits. R.R. at 27a, 32a, 49a, 61a. As to the purported Tariff Rule 4.3 violation, the PUC also determined that Red Lion failed to establish its *prima facie* case because it primarily relied on evidence pertaining to matters outside the PUC's jurisdiction. *Id.* at 32a-33a, 69a.

Contrary to Red Lion's assertion, the PUC did not prematurely require it to demonstrate that the agreement is not reasonable or in the public interest. The PUC merely required Red Lion to rebut York Water's evidence to the contrary. As outlined above, the PUC does not have jurisdiction over the services provided and rates charged by municipal authorities operating under the Municipality Authorities Act because Section 5607(d)(9) of that statute vests jurisdiction over such matters in the courts of common pleas. As a result, the PUC cannot compel DYWA service or rates, lacks authority over the Water Sales Agreement, and does not regulate water disinfection as a service under Section 1501 of the Code. Accordingly, Red Lion could not have prevailed on its request for relief in this regard.

Finally, the only claim that Red Lion presented regarding the application of a "burden of proof" related to the showing of alternatives relative to the Emergency Interconnect Agreement. R.R. at 565a. Now Red Lion challenges the burden of proof regarding all aspects of the approval of the Emergency Interconnect Agreement. Red Lion has waived all of these alternative burden of proof claims. *See* Pa. R.A.P. 1551(a) ("No question shall be heard or considered by the court which was not raised before the government unit . . . ."); Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. §703(a) ("[A] party may not

21

raise upon appeal any other question not raised before the agency . . . unless allowed by the court upon due cause shown.").

Red Lion alleged in its amended complaint that York Water was acting in violation of its Tariff and Section 1501. R.R. at 19a. As a result, the burden was on Red Lion to prove these allegations because they were not part of the proceedings on York Water's application until the two separate matters were consolidated for disposition. Moreover, assuming that the PUC erred in placing the burden of proof on Red Lion, the burden of proof applied by the PUC is immaterial with respect to our review on appeal. When the PUC reviews and evaluates "the weight and probative value of all the evidence," the burden of proof standard that the PUC applied "is of no consequence on appeal." *Milkie v. Pennsylvania Public Utility Commission*, 768 A.2d 1217, 1220-21 (Pa. Cmwlth. 2001). Rather, "the proper focus of [this Court's] review is whether the [PUC's] decision is supported by substantial evidence." *Id.* In this case, the PUC weighed the competing evidence and found York Water's evidence to be more compelling and the PUC's determination in this regard is supported by substantial evidence and this Court will not disturb the PUC's determination on appeal. *Id.*

**III.**

Finally, Red Lion claims that the PUC erred in denying its petition for reconsideration by concluding that its arguments were either waived or without merit.[16] Red Lion contends that the PUC improperly based its determinations on

---

[16] "[T]his Court's scope of review of [the PUC's] denial of reconsideration is limited to determining whether the [PUC] abused its discretion. An abuse of discretion occurs if the [PUC] decision demonstrates bad faith, fraud, capricious action or an abuse of power. Moreover, in deciding whether to deny reconsideration, the [PUC] considers whether the petitioner has **(Footnote continued on next page…)**

22

justifications regarding DYWA's exhaustion of alternatives that were not advanced by York Water until it filed its reply exceptions. 52 Pa. Code §5.243(e). Moreover, Red Lion's failure to introduce York Water's internal emails or the minutes of its Board of Directors' June 26, 2017 meeting is excused because York Water had the burden of proof with respect to the approval of the Emergency Interconnect Agreement. Red Lion further asserts that the PUC's failure to consider these arguments violates Red Lion's due process rights because they were offered to rebut the assertion that York Water raised in its reply exceptions, which were considered and accepted by the PUC in denying Red Lion's reconsideration motion.

However, Red Lion's argument ignores that it had the burden of production to refute York Water's *prima facie* case for Section 507 approval in addition to having the burden of proof with respect to its amended complaint. Red Lion does not contest the denial of its stay request. Requests for reconsideration cannot raise the same questions that were previously decided; rather, they should present new and novel arguments not previously heard or considerations that the PUC may have overlooked. *See, e.g.*, *J.A.M. Cab Co. v. Pennsylvania Public Utility Commission*, 572 A.2d 1317 (Pa. Cmwlth. 1989); *Pennsylvania Railroad Co. v. Pennsylvania Public Service Commission*, 179 A. 850 (Pa. Super. 1935); *Duick v. Pennsylvania Gas and Water Company*, 56 Pa P.U.C. 553 (1982):

The PUC denied Red Lion's reconsideration request because Red Lion failed to raise any new or novel legal or factual questions and failed to raise

---

**(continued…)**

presented new evidence, changed circumstances, or previously unconsidered law." *J.A.M. Cab Co. v. Pennsylvania Public Utility Commission*, 572 A.2d 1317, 1318 (Pa. Cmwlth. 1989).

23

and preserve several issues in its exceptions. R.R. at 57a, 59a, 63a. For example, Red Lion did not raise the mixing of chloramines with chlorine, the number of customers served by the interconnection, and the minimum charge for DYWA service under the agreement. *Id.* at 59a. As the PUC explained, it is not required to grant reconsideration when a party fails to preserve an argument, *id.* at 60a, and the failure to preserve issues in exceptions results in a waiver of those arguments. *See HIKO Energy, LLC v. Pennsylvania Public Utility Commission*, 209 A.3d 246, 263 (Pa. 2019) ("[W]e find that HIKO failed to preserve a constitutional challenge to the fines imposed pursuant to Section 54.4(a) [of the regulations, 52 Pa. Code §54.4(a),] because it did not articulate its constitutional theory until its application for a stay of the [PUC's] decision.") (citation omitted); *Springfield Township v. Pennsylvania Public Utility Commission*, 676 A.2d 304, 309 (Pa. Cmwlth. 1996) ("The Township also challenges PUC's conclusion that the Township failed to prove an unreasonable delay by PECO in changing the rate . . . . However, that issue was not raised by the Township in its exceptions to the ALJ's initial decision and was not considered by PUC. Therefore, the issue was waived and may not be considered on appeal.") (citations omitted). Even if preserved for review, the PUC rejected these claims on the merits by "adopt[ing] the ALJ's thorough disposition of these issues." R.R. at 59a-63a.

Additionally, Red Lion failed to timely introduce York Water's internal emails and Board minutes and attempted to introduce them after the record was closed. Red Lion has not demonstrated the "good cause" that is required by the PUC's regulations to permit reopening the record for the consideration of this evidence by the PUC. *See, e.g.*, *City of Lancaster (Sewer Fund) v. Pennsylvania Public Utility Commission*, 793 A.2d 978, 984 (Pa. Cmwlth. 2002) ("Concerning

24

the claimed 4 percent wage increase [as an administrative expense], the City improperly proffered direct evidence of this wage increase in the rebuttal phase of the rate proceeding. *See* 52 Pa. Code. §5.243(e) (prohibiting the introduction of evidence during a rebuttal phase that ought to have been included in the case-in-chief)."); *Shoemaker v. State Employes' Retirement Board*, 688 A.2d 751, 753 (Pa. Cmwlth. 1997) ("[T]o serve as a basis to reopen the record, the material changes of fact must not have been discoverable prior to the conclusion of the hearing. *See generally, Pennsylvania Labor Relations Board v. Northeastern Educational Intermediate Unit No. 19*, [505 A.2d 1068 (Pa. Cmwlth. 1986)]."). Herein, the PUC properly found that Red Lion's reconsideration petition should be denied because Red Lion either re-raised arguments that the PUC previously considered and rejected or tried to raise new arguments not preserved in its exceptions or introduce new evidence. [17]

Accordingly, the PUC's orders are affirmed.

_____

MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

_____

[17] Red Lion's due process argument in this regard is untenable because it is based on the false premise that York Water bore the burden of proof with respect to its application. As outlined above, Red Lion bore the initial burden of proving a violation of Tariff Rule 4.3 and the PUC properly found that it failed to sustain its burden in this regard. *See* R.R. at 32a ("[W]e agree with the ALJ's determination that the comment made by Ms. Stokes is not substantial evidence to support Red Lion's argument because more is required than a mere trace of evidence or a suspicion of the existence of a fact sought to be established."). Moreover, the purported violation is based on a theory that Red Lion did not present prior to filing its Main Brief and in support of which it did not present any relevant or material evidence in its case in chief. In sum, Red Lion was afforded any process that was due on this claim and its failure to sufficiently exploit its opportunity in this regard is not a basis for finding a constitutional violation.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Red Lion Municipal Authority,     :
    :
          Petitioner   :
    :
          v.     : No. 186 C.D. 2019
    :
Pennsylvania Public Utility     :
Commission,     :
    :
          Respondent :

# **O R D E R**

AND NOW, this 29th day of October, 2019, the orders of the Pennsylvania Public Utility Commission dated September 20, 2018, and January 17, 2019, are AFFIRMED.

 

_____
MICHAEL H. WOJCIK, Judge